Bob Pemberton, Justice
This is an appeal from an order denying a motion for relief under the Texas Citizens Participation Act (TCPA), a statute whose features have been analyzed extensively in this Court's prior decisions.[1] One of those prior decisions- Autocraft -squarely requires reversal of the district court's denial of the TCPA motion with respect to a common-law civil-conspiracy claim that had been founded on alleged misuse of trade secrets and confidential information.[2] But another aspect of the *290 appeal presents questions of first impression regarding the use of a TCPA motion to attack claims for declaratory relief under the Uniform Declaratory Judgments Act (UDJA).[3] Under the circumstances here, we hold that the district court did not err in denying the TCPA motion as to the challenged declaratory claims.
BACKGROUND
Appellee Tejas Promotions, LLC (which we will term "Promotions" to avoid confusion with its similarly named opponent-a similarity that is also a key point of emphasis in Promotions's claims) is engaged in what it terms the "electronic sweepstakes" industry. As depicted in the pleadings and affidavits, Promotions's business entails distributing to retail establishments, such as bars and pool halls, "sweepstakes promotional software" run on electronic games that patrons in such establishments can play for a fee. Promotions is essentially a middleman-it enters into licensing agreements under which it distributes the "sweepstakes promotions" of various software vendors, and in turn enters into sub-licensing agreements with the retail establishments whereby Promotions places the "promotions" in those locations and is compensated with a share of the net revenues generated by those attractions. Promotions asserts that the identities of both its upstream vendors and its sub-licensees, as well as the terms of the agreements governing their respective relationships, are "extremely valuable and confidential." It claims trade secrets in a "unique and valuable business model" and underlying "market research, marketing techniques, ... its software inventory, its customer base, and its pricing strategies."
The genesis of the underlying litigation, according to Promotions, was a series of discussions or negotiations it previously undertook with appellant Bruce Craig regarding Bruce's possible purchase of Promotions's assets, either personally or through an affiliated entity.[4] The transaction ultimately did not go forward,[5] but the discussions had progressed to an extent that Promotions and Bruce had signed a "Mutual Non-Disclosure Agreement" (NDA) that contemplated the parties' sharing of specified "Confidential Information" with each other and restricted use and dissemination of that information. Promotions alleges that it had subsequently shared with Bruce "Confidential Information" that "included trade secret and proprietary data pertaining to [Promotions's] vendors, software, and clients" before discussions concluded. Thereafter, Promotions alleges, Bruce teamed up with his son, Tyler, in forming the deceptively named Tejas Vending , L.P. (Vending); divulged to Tyler and Vending Promotions's trade secrets and other NDA-defined "Confidential Information"; and joined with them in using that information to wrest away from Promotions both a key upstream software vendor and various of Promotions's sub-licensees.
Based on these factual allegations, Promotions asserted five sets of claims for relief in its original petition, which can be summarized as follows:
(1) Claims for damages and attorney's fees against Bruce for allegedly *291 breaching the NDA.[6]
(2) Claims for damages under Chapter 134A of the Civil Practice and Remedies Code against Bruce, Tyler, and Vending for alleged "misappropriation" of "trade secrets" in violation of that statute.[7]
(3) Claims for temporary and permanent injunctive relief against Bruce, Tyler, and Vending to restrain their use and dissemination of "Confidential Information" and to compel its return.[8] Promotions pleaded that these claims were based on both the NDA (which contained a provision entitling a "Discloser to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach by Recipient") and Chapter 134A (which similarly authorized injunctive relief to remedy "actual or threatened misappropriation" of "trade secrets"[9] ), as well as the general authorizations in Chapter 65 of the Civil Practice and Remedies Code[10] and Rule 680 of the Texas Rules of Civil Procedure.[11]
(4) A claim for damages against Bruce, Tyler, and Vending based on a common-law theory of "conspiracy to misappropriate trade secrets."
(5) Several distinct claims for declaratory relief under the UDJA, the details of which we will reserve until they become relevant to the analysis.
Bruce, Tyler, and Vending joined in a motion under the TCPA seeking dismissal, attorney's fees, and sanctions as to only two of Promotions's five sets of claims-the damages claim based on a common-law conspiracy theory and the declaratory claims. The motion thus did not attack Promotions's claims for damages or injunctive relief that were founded on its alleged causes of action for breach of the NDA or Chapter 134A violations, nor otherwise attack Promotions's claims for injunctive relief. The predicate for appellants' motion-the asserted basis for meeting their "initial burden" of showing the TCPA's "applicability" as to the two sets of challenged *292 claims[12] -was that Promotions's pleading allegations demonstrated that those claims were "based on, relate[d] to, or [were] in response to" appellants' "exercise of the right of association"-namely, Bruce's "communications" (a term the TCPA defines to "include[ ] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic"[13] ) of the alleged trade secrets and other "Confidential Information" to and among the other appellants in furtherance of the group's alleged joint wrongdoing.[14] Assuming so, appellants further disputed that Promotions could meet its burden to establish "by clear and specific evidence a prima facie case for each essential element of the claim[s] in question,"[15] and that, regardless, the record established defenses to each of those claims.[16] Among these asserted defenses were that Promotions's common-law "conspiracy to misappropriate trade secrets" claim was preempted by Chapter 134A[17] and that the district court "lacked jurisdiction" to award the declaratory relief Promotions had requested.[18]
After appellants filed their TCPA motion, Promotions amended its petition to nonsuit by omission its common-law conspiracy claim and to amend some of the declaratory claims. Promotions also filed a response to appellants' TCPA motion that joined issue-contesting whether appellants had met their initial burden, presenting affidavits and documentary evidence purporting to establish a "prima-facie case," and attacking appellants' "defenses"-only with respect to Promotions's declaratory claims. It made no such attempt with respect to the now-nonsuited conspiracy claim, perceiving that the claim was "no longer part of this case." However, Promotions viewed appellants' TCPA motion and its response as addressing both the amended versions of its declaratory claims and the prior versions, perceiving the amended versions to be nonsubstantive refinements of the prior ones. Promotions further prayed for the award of attorney's fees and costs that TCPA Section 27.009 authorizes upon a finding that a motion "is frivolous or solely intended to delay."[19]
*293 Following a hearing at which the parties presented only argument, the district court signed an order denying appellants' TCPA motion but reserving for further hearing Promotions's request for attorney's fees under Section 27.009.[20] Before that hearing was held, however, appellants filed a notice of appeal from the order denying their TCPA motion,[21] triggering an automatic statutory stay of all trial-level proceedings in their then-existing state.[22]
ANALYSIS
The three appellants collectively present two issues on appeal. In their first issue, appellants insist that the district court erred in denying their TCPA motion as to Promotions's now-nonsuited common-law conspiracy claim. In the second issue, Tyler Craig and Vending-but not Bruce Craig-challenge the district court's denial of the TCPA motion as to the claims that Promotions has asserted under the UDJA in either their amended or original forms.
As appellants' issues presume, and Promotions seems to acknowledge on appeal, any nonsuit of claims by Promotions did not entirely moot appellants' TCPA motion challenging those claims-appellants could continue to pursue their requests for attorney's fees incurred in defending those claims prior to their voluntary dismissal, as well as for the sanctions the Act would prescribe.[23] Consequently, appellants can properly complain on appeal of not only the district court's denial of their motion as to Promotions's declaratory claims, but also its denial with respect to Promotions's now-nonsuited conspiracy claim. Conversely, because appellants did not challenge any other claims through timely TCPA motion, they have failed to preserve, and therefore have waived, any potential entitlement to TCPA relief as against Promotions's claims for damages or injunctive relief that were founded on its causes of action for breach of the NDA or for Chapter 134A violations, or any other claims by *294 Promotions for injunctive relief.[24] Both of these aspects of this appeal's procedural posture prove to be significant in our analysis.
Conspiracy
In their first issue, appellants urge that the district court erred in denying their TCPA motion as to Promotions's now-nonsuited conspiracy claim. Appellants assert that Promotions's pleading of that claim established as a matter of law that the claim was a "legal action" that was "based on," or at least was "related to" or "in response to," their "exercise of the right of association," in the form of Bruce's alleged "communications" to them of trade secrets or NDA-protected Confidential Information in furtherance of a collective scheme to steal Promotions's business, thereby meeting their initial burden. Appellants further emphasize that Promotions made no attempt to present a "prima facie case" below as to the essential elements of that theory of liability. In any event, appellants add, they established a defense to the conspiracy claim-preemption by Chapter 134A. We are compelled to agree that appellants met their initial burden as a matter of law, and that this alone entitles them to TCPA relief in the posture of this appeal.
This conclusion, as previously indicated, is dictated by Autocraft . In that case, as here, a business (Autocraft, an auto-repair shop) sued a rival (Precision) seeking injunctive and monetary relief based on alleged misuse of trade secrets and confidential information.[25] Precision countered with a TCPA motion, urging in regard to its initial burden that Autocraft's suit (unquestionably one or more "legal actions"[26] ) was "based on, relate[d] to, or in response to" (which Precision assumed to mean in the sense of being predicated upon factually[27] ) Precision's "exercise of the right of association" or the "exercise of the right of free speech" under the Act's definitions of that protected expression.[28] We agreed that Autocraft's suit implicated Precision's "exercise of the right of association"-at least as that term is defined in the TCPA-and did not reach the alternative "exercise of the right of free speech" ground.[29]
The linchpin of our Autocraft analysis was that the Texas Supreme Court's TCPA precedents instructed that we apply a "plain-meaning" construction of the Act's broad terms that, at least with respect to the movant's initial burden, operates largely independently of and extends considerably *295 beyond the constitutional "right of association," "speech," or "petition" that might otherwise have informed the meaning of those terms.[30] Consequently, it was enough that Precision had alleged conduct by Autocraft that would fall within this plain-meaning reading of the TCPA's definition of "communication" (which is not explicitly limited to constitutionally protected expression, but "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic"[31] ) and, in turn, the "exercise of the right of association" (a "communication," so defined, "between individuals who join together to collectively express, promote, pursue, or defend common interests"[32] ), inasmuch as the individual conspirators had allegedly made the complained-of "communications" between themselves to further Precision's rival business.[33]
Promotions's conspiracy claim was materially identical to Precision's claims. Promotions's claim rested upon factual allegations that included "communications"
*296 (as the TCPA would define that term) between the alleged co-conspirators-"In direct violation of the NDA, [Bruce] disclosed the information regarding [Promotions's] assets and business structure to [Tyler]" and to "an entity he created with a deceptively similar name, [Vending]." These alleged "communications" were also purportedly made incident to the alleged conspirators' joint effort to "promote, pursue, or defend" "common interests"-"a course of action designed to use [Promotions's] Confidential Information to steal [Promotions's] business." Under Autocraft and the Texas Supreme Court precedents that compelled our analysis there, appellants needed show no more to meet their initial burden through reliance on the "exercise of the right of association." And to the extent that Promotions's conspiracy claim was predicated factually upon acts that would in themselves not be "communications" within the TCPA definition and would thus fall outside of the "exercise of the right of association," any such components of the claims would nonetheless easily "relate to" or be "in response to" the "communications" constituting the "exercise of the right of association," similar to the "additional claims" in our more recent Cavin decision.[34]
Either way, appellants met their initial burden as a matter of law with respect to Promotions's former conspiracy claim. Promotions's entreaties to the contrary resemble those of Autocraft, emphasizing conventional constitutional concepts of the "right to association" and frustrated befuddlement as to how appellants could insist that an "anti-SLAPP" law protects the alleged wrongdoers in a commercial dispute about alleged misuse of trade secrets and confidential information. Others (including some judges) have urged similar views in the past, but the controlling jurisprudence has since taken a different path, as we have seen.[35] Nor does Promotions otherwise present a viable argument to support an alternative conclusion.[36]
*297 Because appellants met their initial burden as to Promotions's conspiracy claim, we may affirm the district court's order denying TCPA relief only if Promotions presented a "prima facie case" as to each essential element of that theory of liability.[37] Promotions made no attempt to do so before the district court-another feature of the case in common with Autocraft[38] -instead urging at that juncture that the claim was "no longer part of this case." In this posture, the district court had no discretion but to grant appellees' TCPA motion as to Promotions's conspiracy claim. Accordingly, we sustain appellants' first issue without need to reach their preemption argument.[39]
Declaratory-judgment claims
In the second issue, presented by Tyler and Vending but not Bruce, those appellants insist that the district court similarly erred in failing to grant their TCPA motion as to Promotions's declaratory claims. As with Promotions's conspiracy claim, the appellants urge that the declaratory claims constitute one or more "legal actions" that are "based on, relate[ ] to, or in response to" their "exercise of the right of association" through Bruce's alleged transmission of information to them in pursuit of Promotions's vendors and customers. Assuming so, Tyler and Vending further argue that Promotions failed to present a "prima facie case" as to the claims' "essential elements" and bring forward their defenses raised below.
This Court has not yet had occasion to address whether or under what circumstances an action for declaratory relief brought under the UDJA is or can be a "legal action" that "is based on, relates to, or is in response to" TCPA-protected expression and is, therefore, subject to TCPA challenge.[40] But before turning to the TCPA's provisions that would bear upon the answer, we should first emphasize some key characteristics of the declaratory relief authorized by the UDJA, and of Promotions's particular declaratory claims, which frame the specific question presented here.
While sometimes termed a "cause of action" colloquially,[41] declaratory *298 relief under the UDJA is more precisely a type of remedy that may be obtained with respect to a cause of action or other substantive right-"[a] court of record within its jurisdiction has power to declare rights, status, and other legal relations," which "may be either affirmative or negative in form," and such a "declaration has the force and effect of a final judgment or decree."[42] The permissible subjects of UDJA declarations expressly include "question[s] of construction or validity" and "rights, status, or other legal relations" under contracts such as the NDA and statutes such as Chapter 134A.[43] Aside from an implied limited waiver of sovereign immunity, the UDJA does not expand the trial court's jurisdiction to grant the declaratory remedy it provides, nor alter the underlying substantive rights of any party.[44] Rather, the Act is "remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations,"[45] and may be deployed where a justiciable controversy exists regarding those matters that may be resolved with the declaration sought.[46]
"The [UDJA] was originally 'intended as a speedy and effective remedy' for settling disputes before substantial damages were incurred," and one that "is simpler and less harsh" than the "coercive" remedies of damages or injunctive relief.[47] In this respect, declaratory relief under the UDJA, as the Texas Supreme Court observed long ago, "is neither legal nor equitable, but sui generis."[48] Yet the mere availability of alternative remedies in a given case (aside from exclusive statutory remedies) does not categorically preclude the UDJA's use also,[49] as the Act explicitly operates "whether or not further relief is or could be claimed."[50] Likewise, the UDJA expressly authorizes construction of a contract "either before or after there has been a breach,"[51] thus contemplating that such declaratory relief may potentially be awarded even where there is a matured cause of action for breach of contract.[52] However, this sort of overlap may preclude recovery of the attorney's *299 fees the UDJA would authorize,[53] especially where the declaratory claim is substantively subsumed within or merely "tacked onto a standard suit based on a matured breach of contract" or other cause of action.[54]
As for Promotions's specific claims for relief under the UDJA, it seeks the following declarations in the amended, live version of its petition, identified as they appear in that pleading:
a. [That] [t]he "Non-Disclosure and Assignment of Inventions Agreement" ("NDA") is a valid, enforceable agreement.
b. That the names and identities of Plaintiff's software vendors constitute "Confidential Information" under the terms of the NDA.
c. That the information provided by Plaintiff to Bruce Craig via electronic mail on October 14, 2015 constitutes "Confidential Information" under the terms of the NDA.
d. That pursuant to the NDA, Defendant Bruce Craig had an obligation, as Recipient, to prevent the disclosure of and refrain from disclosing "Confidential Information," including the Plaintiff's trade secrets, outside of the Relationship.
e. That, under the terms of the NDA, the disclosure of "Confidential Information" and/or the failure to prevent the disclosure of "Confidential Information" constitutes a breach of the NDA.
f. That pursuant to the NDA, the Plaintiff, as Discloser, has the right to pursue certain remedies, in the case of a breach of the terms of the NDA, which include the pursuit of monetary damages and injunctive relief.
Declaratory claims (a), (b), and (c) also appeared in Productions's original petition, while (d), (e), and (f) are collectively revisions or refinements of the following four substantively similar declaratory claims from the original petition:
Former d. That use [of] the information provided by Plaintiff to Bruce Craig via electronic mail on October 14, 2015 is a breach of the NDA.
Former e. That communication of the information provided by Plaintiff to Bruce Craig via electronic mail on October 14, 2015 to Tyler Craig and Tejas Vending LP is a breach of the NDA.
Former f. That Plaintiff is entitled to an order granting immediate injunctive relief to prevent Defendants, from using for their benefit, or imparting to any other person, firm, or corporation, the materials, tests, or production information used and employed by the Plaintiff, or learned by the Defendant Bruce Craig in his business negotiations with the Plaintiff.
Former g. That without said intervention, the Plaintiff will suffer imminent and irreparable harm.
These declaratory claims (current (a) through (f), plus former (d) through (g) ) are the sole relief Promotions has sought under the UDJA; in neither version of its petition did Promotions pray for attorney's fees under that statute.
Tyler and Vending have raised, as "defenses" material to the third stage of the *300 TCPA's burden-shifting analysis,[55] challenges to the district court's subject-matter jurisdiction to adjudicate most of Productions's declaratory claims. Because these challenges, if meritorious, would potentially render advisory some of the first two stages of the TCPA analysis, we consider them first.[56]
Tyler and Vending insist there is no justiciable controversy underlying any of the current declaratory claims (a) through (f) or former declaratory claims (d) and (e) to the extent these claims are asserted against them, as opposed to Bruce. They reason that (1) each of these claims concerns the NDA, (2) only Bruce was a party to that contract, so (3) there is no justiciable controversy regarding these claims to the extent they are asserted against them as non-parties to the NDA. But as Promotions points out, the subject matter of these declaratory claims, relating to the status of information under the NDA, also "directly bear[s] on the misappropriation claims made against all Appellants" under Chapter 134A,[57] and it likewise implicates other bases for the injunctive relief Promotions seeks against all three appellants. All of these other *301 claims for damages and injunctive relief remain pending and were not challenged through appellants' TCPA motion, and they reflect a live, justiciable controversy regarding the subject matter of these declaratory claims.
Tyler and Vending have also taken the opposite tack, urging that each of the current declaratory claims and former claims (d) and (e) are barred jurisdictionally or otherwise unavailable under the UDJA because they are merely "redundant of" and seek "to establish what [Promotions] was otherwise required to establish in its breach-of-contract action" against Bruce. Leaving aside their aforementioned acknowledgment that these declaratory claims extend beyond the scope of Promotions's breach-of-contract action in seeking declarations against them and not merely Bruce, the premise of Tyler and Vending's "redundancy" challenge is mistaken. It is true that the "redundant remedies" doctrine may be a jurisdictional bar to declaratory relief against a governmental entity that duplicates or overlaps a remedy provided elsewhere; this is an implication of the sovereign or governmental immunity such entities generally enjoy.[58] But where, as here, the purportedly "redundant" declaratory claims are asserted against private parties, the Texas Supreme Court has indicated that the overlap is neither a jurisdictional bar nor a categorical prohibition against the claims-the consequence, rather, is that the claimant cannot recover the attorney's fees that the UDJA would otherwise authorize.[59] And that potential consequence is not at issue here because Promotions has not sought to recover UDJA attorney's fees.
On the other hand, these challenges urged by Tyler and Vending do serve to highlight that each of Promotions's declaratory claims represent determinations of law, or of mixed questions of fact and law, that are also components of or subsumed within Promotions's pending claims for damages or injunctive relief, including those founded on its alleged causes of action for breach of the NDA or Chapter 134A violations. This is true not only of the current declaratory claims (a) through (f) and former claims (d) and (e), the focus of Tyler and Vending's challenges, but also of the remaining two former claims (f) and (g), which refer to elements of Productions's claims for injunctive relief. This overlap, again, is not a per se barrier to Promotions's declaratory claims in themselves, and Promotions does not seek the attorney's fees whose recoverability would be implicated by the overlap.[60] The overlap's significance here, rather, is that appellants'
*302 TCPA motion, as it was framed, can have no practical effect on the parties relative to the interests protected by that statute.
Even if all of Promotions's declaratory claims were dismissed, or had never been asserted, appellants would still face claims and causes of action asserted by Promotions that would subsume the subjects of the requested declarations, yet seek greater relief-the coercive remedies of damages and injunctive relief-that implicate the same "exercise of the right of association" on which appellants' TCPA motion is predicated. Further, appellants waived any TCPA challenge to these broader claims by failing to raise it through a timely motion. With those broader claims and causes of action remaining in the case regardless, determination of appellants' entitlement to TCPA relief against the declaratory claims, claims concerning mere component or subsidiary issues subsumed within the broader claims and causes of action that cannot now be attacked under the TCPA, would resolve a mere legal abstraction having no impact on any interests protected by that statute-the hallmark of unconstitutional advisory opinion[61] -or alternatively would have been rendered moot in the inception by the limited scope of appellants' motion.[62] Nor would the Act's fee-shifting or sanctions provisions alone preserve a justiciable controversy regarding appellants' entitlement to TCPA relief against the declaratory claims-appellants' motion would never have been justiciable in the first instance as to those claims. In short, it is not Promotions's declaratory claims that present a potential justiciability problem in this case, but rather the posture of appellants' TCPA motion attacking those claims.[63]
When possible, we are to give statutes a construction consistent with constitutional requirements,[64] and this maxim informs the construction we must give to the TCPA here. The pivotal term is "legal action"-the type of claim or proceeding that is subject to challenge by TCPA motion. The TCPA's general definition of "legal action" states that the term "means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief."[65] Appellants' premise is that Promotions's declaratory claims are, collectively or individually, a *303 stand-alone "legal action" (or actions) and correspondingly subject to independent TCPA challenge. Even if that construction might otherwise be supported by some component of the "legal action" definition,[66] both the Texas Supreme Court and this Court have recognized that such mere correspondence is not always the end of the inquiry-courts must frequently discern also which of two or more facially applicable components is the correct definition of "legal action" to apply in the context of the particular TCPA motion at issue and the Act's provisions as a whole.[67] In this case, the context of appellants' motion, the TCPA as a whole, and the potential constitutional implications favor an alternative construction of the "legal action" definition-the relevant "legal actions" here are Promotions's "causes of action" for alleged breach of contract, Chapter 134A violations, and any remaining bases for injunctive relief. Because Promotions's declaratory claims merely concern issues that are subsumed within those "causes of action," appellants' TCPA motion challenging the declaratory claims does not implicate any independent "legal action" (in this relevant sense) and was thereby waived by appellants' failure to challenge the broader claims and causes of action in their motion. Accordingly, the district court did not err in denying the TCPA motion as to the declaratory claims, and we need not reach the parties' remaining arguments.[68] We overrule the second issue brought by Tyler and Vending.
CONCLUSION
We affirm the district court's order denying TCPA relief as to Promotions's declaratory-judgment claims, but must reverse the order as to Promotions's *304 nonsuited conspiracy claim. As to this conspiracy claim only, we render judgment granting appellants' TCPA motion and remand to the district court so it can determine and award the attorney's fees and sanctions the TCPA requires.[69] Our opinion and judgment, including this partial reversal of the district court's original disposition of appellants' TCPA motion, should likewise inform any further proceedings on Promotions's own pending motion for fees and sanctions.

See, e.g. , Cavin v. Abbott , 545 S.W.3d 47, 49, No. 03-16-00395-CV, 2017 WL 3044583, at *1, 2017 Tex. App. LEXIS 6511, at *1-2, *14-16 (Tex. App.-Austin July 14, 2017, no pet.) (analyzing TCPA's broad coverage and procedural framework in course of holding that TCPA applied "in the context of litigation arising from family tumult over an adult daughter's choice of a husband," including requiring dismissal of claims based on alleged stalking and car theft); Elite Auto Body LLC v. Autocraft Bodywerks, Inc. , 520 S.W.3d 191, 193, 196-206 (Tex. App.-Austin 2017, pet. dism'd) (similarly analyzing TCPA's coverage and procedural framework in course of holding that TCPA required dismissal of claims seeking to remedy alleged misappropriation or misuse of a business's trade secrets or confidential information).

See Autocraft , 520 S.W.3d at 198-206.

See generally Tex. Civ. Prac. & Rem. Code §§ 37.001 -.011.

Because the two individual appellants share a common surname, we identify them by first names instead.

According to Promotions, it determined, "[a]fter conducting its due diligence," that "it was not in its best interest to enter into a business transaction with Bruce Craig."

See id. § 38.001(8) (authorizing attorney's fees to prevailing party on claim on "oral or written contract").

See id. § 134A.004 (authorizing "damages for misappropriation"); see also id. § 134A.002(3) (defining "misappropriation" for purposes of chapter), (6) (similarly defining "trade secret").

Promotions prayed specifically for temporary and permanent injunctions that enjoined Bruce, Tyler, and Vending from:
(a) using Confidential Information disclosed to Defendants by Plaintiff for its own use or for any purpose, disclose or permit disclosure of Confidential Information to third parties or to employees of the Defendants, putting Confidential Information into the public domain or possession of persons other than those authorized to have information under the NDA, (b) making copies or duplicates of any confidential information, (c) retaining any Confidential Information, (d) failing to return all Confidential Information to the Plaintiff[,] (e) modifying, reverse engineering, decompiling, creating other works from or disassembling any software programs contained in the Confidential Information, and (f) disclosing the fact that Confidential Information has been disclosed to Defendant Bruce Craig, that discussions or negotiations took place between the Plaintiff and Defendant Bruce Craig, or the terms, conditions, status or other facts exchanged during the course of the business negotiations between the Plaintiff and Defendant Bruce Craig.

See id. § 134A.003.

See id. § 65.011 (authorizing injunction under certain conditions).

See Tex. R. Civ. P. 680 (authorizing temporary restraining orders).

See Tex. Civ. Prac. & Rem. Code § 27.005(b) (movant must initially "show[ ] by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association"); see also Cavin , 545 S.W.3d at 57-59, 2017 WL 3044583, at *7-8, 2017 Tex. App. LEXIS 6511, at *19-21 (explaining this "initial burden" or "applicability" stage of the analysis).

Tex. Civ. Prac. & Rem. Code § 27.001(1).

See id. § 27.001(2) (" 'Exercise of the right of association' means a communication between individuals who join together to collectively ... promote, pursue, or defend common interests.").

See id. § 27.005(c) ; see also Cavin , 545 S.W.3d at 69-72, 2017 WL 3044583, at *16-18, 2017 Tex. App. LEXIS 6511, at *43-45 (explaining this next "merits-testing" phase of the TCPA analysis).

See Tex. Civ. Prac. & Rem Code § 27.005(d) ("Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.").

See id. § 134A.007(a), (b) ("[T]his chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret," but does not impact contractual or criminal remedies or "other civil remedies that are not based upon misappropriation of a trade secret....").

Appellants also waged this line of attack through a plea to the jurisdiction.

See id. § 27.009(b).

The district court also heard and denied appellants' plea to the jurisdiction at this time.

See id. § 51.014(a)(12) ("A person may appeal from an interlocutory order of a district court ... that ... denies a motion to dismiss filed under Section 27.003....").

Id. § 51.014(b) (indicating that appeal under Subsection (a)(12) is among those that stay "the commencement of a trial" and "all other proceedings" in the trial court pending resolution of the appeal); In re Texas Educ. Agency , 441 S.W.3d 747, 750 (Tex. App.-Austin 2014, orig. proceeding) (" '[T]he stay set forth in section 51.014 is statutory and allows no room for discretion.' " (quoting Sheinfeld, Maley & Kay, P.C. v. Bellush , 61 S.W.3d 437, 439 (Tex. App.-San Antonio 2001, no pet.) (alteration original), and citing Tarrant Reg'l Water Dist. v. Gragg , 962 S.W.2d 717, 718 (Tex. App.-Waco 1998, order), disp. on the merits , 43 S.W.3d 609, 612 (Tex.App.-Waco, 2001), aff'd , 151 S.W.3d 546 (Tex. 2004) ) ). We were subsequently called upon to resolve a dispute between the parties concerning the effect of this automatic stay. See Craig v. Tejas Promotions, LLC , No. 03-16-00611-CV, 2016 WL 4980505, 2016 Tex. App. LEXIS 10245 (Tex. App.-Austin Sept. 15, 2016, order).

See Hawxhurst v. Austin's Boat Tours , 550 S.W.3d 220, 231-32 n.4, No. 03-17-00288-CV, 2018 WL 1415109, at *7 n.4, 2018 Tex. App. LEXIS 2081, at *22 n.4 (Tex. App.-Austin Mar. 22, 2018, no pet. h.) (recognizing that meritorious motion under TCPA would survive nonsuit of challenged "legal action" to extent of pursuing attorney's-fees and sanctions awards because these requests are considered claims for "affirmative relief" that survive a nonsuit (citing Walker v. Hartman , 516 S.W.3d 71, 80 (Tex. App.-Beaumont 2017, pet. filed) ; Rauhauser v. McGibney , 508 S.W.3d 377, 381 (Tex. App.-Fort Worth 2014, no pet.), overruled on other grounds by Hersh v. Tatum , 526 S.W.3d 462, 467 (Tex. 2017) ) ).

See Tex. Civ. Prac. & Rem. Code § 27.003(b) ("A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action."). Nor have appellants preserved any request or claim for an extension of this deadline for "good cause." See id.

See Autocraft , 520 S.W.3d at 194. The alleged sources of the disclosures in Autocraft were former Autocraft employees who had gone to work for Precision, but this factual difference would not distinguish it materially from the present case. See ids="12381746" index="32" url="https://cite.case.law/sw3d/520/191/#p193">id.

See id. at 197 ("There is no question that Autocraft's lawsuit seeking injunctive and monetary relief, or alternatively each of its component claims for such relief, is a 'legal action,' a term that the TCPA defines to include 'a lawsuit, cause of action, petition, ... or any other judicial pleading or filing that requests legal or equitable relief.' " (quoting Tex. Civ. Prac. & Rem. Code § 27.001(6) (alteration original) ) ). The same would be true of Promotions's claim for money damages based on its conspiracy theory.

See id.

See id. at 197-98.

See id. at 205-06.

See id. at 200-05 (analyzing implications of ExxonMobil Pipeline Co. v. Coleman , 512 S.W.3d 895, 898-902 (Tex. 2017) (per curiam), and Lippincott v. Whisenhunt , 462 S.W.3d 507, 508-09 (Tex. 2015) (per curiam), and observing that "Coleman seems to have put to rest any notion that any constitutional connotations of 'right of association,' 'right of free speech,' or 'right to petition' should inform the meaning of the TCPA's corresponding 'exercise of' definitions (a conclusion perhaps also hinted at, but not entirely clear from, its earlier Lippencott decision)"). The high court's post-Autocraft decisions have further confirmed this view. See Adams v. Starside Custom Builders, LLC , 547 S.W.3d 890, 892, No. 16-0786, 2018 WL 1883075, at *3, 2018 Tex. LEXIS 327, at *1-2, *8-9 (Tex. Apr. 20, 2018) (explaining that the "TCPA provides its own definition of 'exercise of the right of free speech' " that "is not fully coextensive with the constitutional free-speech right protected by the First Amendment to the U.S. Constitution and article I, section 8 of the Texas Constitution" and applying this "wide net" according to its terms to capture broad range of statements about developer whose subject matter corresponded or "related" to those included within TCPA-defined "matter of public concern" and, in turn, the "exercise of the right to free speech"); Hersh , 526 S.W.3d at 467-68 (explaining that commentator's "personal views on publication of suicide as a cause of death in obituaries" sufficed as "matter of public concern," and therefore as the "exercise of the right of free speech" for TCPA purposes, because subjects of "suicide prevention and awareness relate to health, safety, and community well-being" (citing Tex. Civ. Prac. & Rem. Code § 27.001(7) ) ).

See Autocraft , 520 S.W.3d at 204-05 ("[I]n Coleman 's wake, we must reject Autocraft's attempts to limit TCPA 'communications' solely to those the First Amendment protects.... We must instead give effect to the definition's 'plain language' as written, and accordingly hold that 'communications' under the TCPA extend to appellants' 'making or submitting of ... statement[s] or document[s] in any form or medium, including oral, visual, written, audiovisual, or electronic,' without regard to whether, as Autocraft insists, their statements effected the misappropriation or misuse of its trade secrets or confidential information, or would be constitutionally unprotected." (quoting Tex. Civ. Prac. & Rem. Code § 27.001(1), and Coleman , 512 S.W.3d at 901-02 ) ).

Tex. Civ. Prac. & Rem. Code § 27.001(2).

See Autocraft , 520 S.W.3d at 205 ("Autocraft's claims complain ... of ... 'communications' among appellants within the Precision enterprise through which they have allegedly shared or used the Autocraft information in question, as well as 'communications' by appellants to current Autocraft employees aimed at luring them to Precision. Autocraft further complains-indeed, it is the heart of Autocraft's case-that this alleged conduct by appellants, constituting 'communications' within the TCPA definition, is in furtherance of the Precision business enterprise relative to Autocraft's competitive position. These facts satisfy the remaining elements of the 'exercise of the right of association' definition as we are to read them.").

See Cavin , 545 S.W.3d at 65-71, 2017 WL 3044583, at *13-17, 2017 Tex. App. LEXIS 6511, at *35-43.

See Autocraft , 520 S.W.3d at 200-04 (acknowledging that Coleman resolved this Court's prior internal debate "between (1) those who advocate what they view as straightforward adherence to the ordinary or plain meaning of the statutory text within the four corners of the Act's definitions, versus (2) those who insist the parameters of the constitutional 'right of association,' 'right of free speech,' or 'right to petition' must equally inform how the definition's contents are read," and contrasting Serafine v. Blunt , 466 S.W.3d 352, 357 n.1, 359-60 (Tex. App.-Austin 2015, no pet.) (Serafine I ), with id. at 377-82 (Pemberton, J., concurring) ); see also Cavin , 545 S.W.3d at 70 & n.87, 2017 WL 3044583, at *16 & n.87, 2017 Tex. App. LEXIS 6511, at *39-43 & n.87 (observing that while these and other implications of this plain-meaning construction of the TCPA may arguably "sound crazy," they do not rise to the "truly exceptional" level of "absurd results," such that "[w]e are bound to give effect to the statute the Legislature has written").

Promotions urges that appellants failed to present "evidence" of any "common interest" whose furtherance was implicated by its conspiracy claim, similar to the movant's failure-of-proof problem in Cheniere Energy, Inc. v. Lotfi , 449 S.W.3d 210, 213-17 (Tex. App.-Houston [1st Dist.] 2014, no pet.). This view is refuted by the pleadings we have summarized, and otherwise seems to derive from appellants' now-rejected premise that the TCPA's "exercise of the right of association" extends only to constitutionally protected expression. To the extent Promotions is suggesting that the TCPA required appellants to present "evidence" in support of their motion beyond mere reference to Promotions's material pleadings, that view is belied by the statutory text and the Texas Supreme Court's recent Hersh decision. See Tex. Civ. Prac. & Rem. Code § 27.006(a) (under TCPA, pleadings are considered "evidence"); Hersh , 526 S.W.3d at 467 (holding that Section 27.006 mandates consideration of the material pleadings as "evidence" in the "preponderance of the evidence" inquiry regarding initial burden, and that "[w]hen it is clear from [those] pleadings that the action is covered by the Act, the [movant] need show no more"). And Hersh similarly forecloses a final argument urged by Promotions, who insists appellants "are precluded from having it both ways" by relying on Promotions's pleading allegations as "evidence" supporting their TCPA motion while also joining issue with the allegations' merits through a general denial. Cf. Hersh , 526 S.W.3d at 467 (rejecting this view); accord Hawxhurst , 550 S.W.3d at 228, 2018 WL 1415109, at *5, 2018 Tex. App. LEXIS 2081, at *15 (similarly recognizing that "the Texas Supreme Court has recently rejected th[is] 'actual-innocence defense' " in Hersh ).

Tex. Civ. Prac. & Rem. Code § 27.005(c) ; Cavin , 545 S.W.3d at 69-71, 2017 WL 3044583, at *16-17, 2017 Tex. App. LEXIS 6511, at *43 (recognizing that this would be an alternative ground for affirming trial-court order denying TCPA motion).

See Autocraft , 520 S.W.3d at 206.

See Tex. R. App. P. 47.1.

In Long Canyon Phase II & III Homeowners Ass'n v. Cashion , the TCPA movant had initially challenged monetary, injunctive, and declaratory-judgment claims brought by the nonmovant, but ultimately withdrew the portion of the motion that challenged the declaratory claims. See 517 S.W.3d 212, 218 (Tex. App.-Austin 2017, no pet.).

See, e.g. , Crawford v. XTO Energy, Inc. , 509 S.W.3d 906, 911 n.3 (Tex. 2017) (terming action brought under UDJA "[o]ne of [the claimant's] causes of action"); Thomas v. Long , 207 S.W.3d 334, 337 (Tex. 2006) (referring to suit seeking declaratory judgment and mandamus in terms of "causes of action").

Tex. Civ. Prac. & Rem. Code § 37.003(a), (b).

Id. § 37.004(a).

See, e.g. , Texas Ass'n of Bus. v. Texas Air Control Bd. , 852 S.W.2d 440, 444 (Tex. 1993) (emphasizing, with respect to justiciability requirements, that UDJA is "merely a procedural device for deciding cases already within a court's jurisdiction"); see also Ex parte Springsteen , 506 S.W.3d 789, 799 (Tex. App.-Austin 2016, pet. denied) ("[A]s the high court has clarified in recent years, the UDJA's sole feature that can impact trial-court jurisdiction to entertain a substantive claim is the statute's implied limited waiver of sovereign or governmental immunity that permits claims challenging the validity of ordinances or statutes." (citing Texas Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 634-35 (Tex. 2010), and Texas Educ. Agency v. Leeper , 893 S.W.2d 432, 446 (Tex. 1994) )).

Tex. Civ. Prac. & Rem. Code § 37.002(b).

See, e.g. , City of Dallas v. VSC, LLC , 347 S.W.3d 231, 240 (Tex. 2011) (citing Bonham State Bank v. Beadle , 907 S.W.2d 465, 467 (Tex. 1995) ).

MBM Fin. Corp. v. Woodlands Oper. Co. , 292 S.W.3d 660, 670 (Tex. 2009) (quoting Cobb v. Harrington , 144 Tex. 360, 190 S.W.2d 709, 713 (1945), and Restatement (Second) of Judgments § 33 cmt. c (Am. Law Inst. 1982) ).

Cobb , 190 S.W.2d at 713 (citations omitted).

See MBM Fin. Corp. , 292 S.W.3d at 669.

Tex. Civ. Prac. & Rem. Code § 37.003(a).

Id. § 37.004(b).

See MBM Fin. Corp. , 292 S.W.3d at 669.

See Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

See MBM Fin. Corp. , 292 S.W.3d at 670.

See Tex. Civ. Prac. & Rem. Code § 27.005(d).

Cf. Rusk State Hosp. v. Black , 392 S.W.3d 88, 95-96 (Tex. 2012) (in light of constitutional prohibition against advisory opinions, declining to construe Section 51.014(a) of Civil Practice and Remedies Code to bar appellate court from addressing immunity-based jurisdictional challenge in context of interlocutory appeal taken under subsection other than (a)(8) ).

The statute defines the material terms as follows:
(3) "Misappropriation" means:
(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) disclosure or use of a trade secret of another without express or implied consent by a person who:
(i) used improper means to acquire knowledge of the trade secret;
(ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
(a) derived from or through a person who used improper means to acquire the trade secret;
(b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or
(c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret; or
(iii) before a material change of the position of the person, knew or had reason to know that the trade secret was a trade secret and that knowledge of the trade secret had been acquired by accident or mistake.
(3-a) "Owner" means, with respect to a trade secret, the person or entity in whom or in which rightful, legal, or equitable title to, or the right to enforce rights in, the trade secret is reposed.
...
(6) "Trade secret" means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
(A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.
Tex. Civ. Prac. & Rem. Code § 134A.002.

See City of New Braunfels v. Carowest Land, Ltd. , 549 S.W.3d 163, 173, No. 03-16-00249-CV, 2017 WL 2857142, at *6, 2017 Tex. App. LEXIS 6130, at *17 (Tex. App.-Austin June 29, 2017, no pet.) ("[U]nder the redundant remedies doctrine, courts do not have jurisdiction over a claim brought under the UDJA against a governmental entity 'when the same claim could be pursued through different channels.' " (quoting Patel v. Texas Dep't of Licensing & Regulation , 469 S.W.3d 69, 79 (Tex. 2015) ) (other citations omitted) ).

See MBM Fin. Corp. , 292 S.W.3d at 669-71 (explaining that "while declaratory relief may be obtained under the Act [against a private party] in all these circumstances [involving declaratory claims regarding fully matured breach-of-contract and fraud claims], that does not mean attorney's fees can too," and holding that fees were unavailable for declaratory claims that "were part and parcel of the ... contract claim," "duplicative of the ... fraud claim," and "merely duplicated issues already before the trial court").

See id. ; cf. Tex. Civ. Prac. & Rem. Code § 37.008 (affording trial court discretion to "refuse to render or enter a declaratory judgment or decree if the judgment or decree would not terminate the uncertainty or controversy giving rise to the proceeding").

See, e.g. , Texas Ass'n of Bus. , 852 S.W.2d at 444 ("The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties.").

See, e.g. , Heckman v. Williamson County , 369 S.W.3d 137, 162 (Tex. 2012) ("Put simply, a case is moot when the court's action ... cannot affect the parties' rights or interests." (citing VE Corp. v. Ernst & Young , 860 S.W.2d 83, 84 (Tex. 1993) (per curiam) ) ).

And we are obligated to consider these justiciability issues sua sponte. See, e.g. , Texas Quarter Horse Ass'n v. American Legion Dep't of Tex. , 496 S.W.3d 175, 180 n.13 (Tex. App.-Austin 2016, no pet.) ("[B]ecause the [justiciability] doctrines implicate subject-matter jurisdiction, they may be raised at any time, including appeal, and we may (and sometimes must) consider them sua sponte." (citing Texas Ass'n of Bus. , 852 S.W.2d at 446 ) ).

See Tex. Gov't Code § 311.021(1) ("In enacting a statute, it is presumed that ... compliance with the constitutions of this state and the United States is intended."); In re Allcat Claims Servs., L.P. , 356 S.W.3d 455, 468 (Tex. 2011) (orig. proceeding) (" 'Statutes are given a construction consistent with constitutional requirements, when possible, because the legislature is presumed to have intended compliance with [the Constitution].' " (quoting Proctor v. Andrews , 972 S.W.2d 729, 735 (Tex. 1998) (alteration original) ) (other citations omitted) ).

Tex. Civ. Prac. & Rem. Code § 27.001(6).

See, e.g. , Crawford , 509 S.W.3d at 911 n.3 (terming action brought under UDJA "[o]ne of [the claimant's] causes of action"); Texas Dep't of Transp. v. Sefzik , 355 S.W.3d 618, 619 (Tex. 2011) (per curiam) (referencing claimant's "lawsuit seeking declaratory relief under the Uniform Declaratory Judgments Act (UDJA)"); but cf. Cobb , 190 S.W.2d at 713 (terming declaratory relief under UDJA "neither legal nor equitable, but sui generis").

See D Magazine Partners, L.P. v. Rosenthal , 529 S.W.3d 429, 441 (Tex. 2017) (confirming that different "claims" or causes of action within the same lawsuit or pleading instrument can be considered separate "legal actions" in context of TCPA motion); Serafine I , 466 S.W.3d at 360 (similarly holding that TCPA movant met initial burden as to portion of tortious-interference counterclaim that was factually founded on movant's filing of lawsuit and did not meet burden "to the extent that the ... tortious-interference counterclaim is based in part on Serafine's alleged threats made outside the context of the lawsuit"). To similar effect, sister courts have declined to read "legal action" to include literally every iteration of a "petition," even amended petitions making no substantive change, because this would be inconsistent with the TCPA as a whole. See, e.g. , Jordan v. Hall , 510 S.W.3d 194, 198 (Tex. App.-Houston [1st Dist.] 2016, no pet.) ("Although an amended petition asserting claims based upon new factual allegations may reset a TCPA deadline as to the newly-added substance, the deadline for a TCPA motion is not reset when a plaintiff files an amended petition that adds no new claims and relies upon the same factual allegations underlying an original petition." (citing James v. Calkins , 446 S.W.3d 135, 142 (Tex. App.-Houston [1st Dist.] 2014 pet. denied), and Paulsen v. Yarrell , 455 S.W.3d 192, 198 (Tex. App.-Houston [1st Dist.] 2014, no pet.), superseded by statute on other grounds , Act of May 24, 2013, 83d Leg. R.S., ch. 1042, § 4 (codified at Tex. Civ. Prac. & Rem. Code § 51.014(a)(12) (2014) ), as recognized in Jordan , 510 S.W.3d at 198 ) ); Paulsen , 455 S.W.3d at 197-98 (explaining that contrary construction would allow continual resetting of Section 27.003(b) 's 60-day deadline for filing dismissal motions, thereby frustrating Act's expressed purpose of facilitating early dismissal of lawsuits that impinge upon expressive freedoms (citing Tex. Civ. Prac. & Rem. Code § 27.002 ) (other citations omitted) ).

See Tex. R. App. P. 47.1.

See Serafine v. Blunt , No. 03-16-00131-CV, 2017 WL 2224528, at *6-7, 2017 Tex. App. LEXIS 4606, at *20-22 (Tex. App.-Austin May 19, 2017, pet. denied) (mem. op.) (Serafine II ) (recognizing that TCPA mandated attorney's-fee award to movant with respect to "legal action" that was ultimately dismissed (citing Sullivan v. Abraham , 488 S.W.3d 294, 299 (Tex. 2016) ) ); id. at *7, 2017 Tex. App. LEXIS 4606 at *22-23 (concluding that TCPA likewise requires "some sanctions award-i.e., an amount greater than zero ... but allows the trial court broad discretion to determine an amount 'sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter,' i.e., a 'legal action' subject to dismissal under the TCPA." (emphasis in original) (citing Tex. Civ. Prac. & Rem. Code § 27.009(a)(2) ) (other citations omitted) ).