# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00233-CV

---

**Camino Real Developers, LLC; Jack Dyer; and Dan Addante, Appellants**

**v.**

**Tim Adkins and RivenRock, LLC, Appellees**

---

### FROM THE 421ST DISTRICT COURT OF CALDWELL COUNTY
### NO. 21-0-359, THE HONORABLE CHRIS SCHNEIDER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Dan Addante and Jack Dyer, who were defendants in the suit below, and Camino Real Developers, LLC, an intervenor in the suit below, all appeal the trial court's judgment, rendered after a bench trial. The court rendered judgment for Tim Adkins and RivenRock, LLC on their claim for breach of contract, by which they sought specific performance, and on their claims for declaratory relief, but the trial court denied all their other claims—fraudulent inducement, breach of fiduciary duty, tortious interference with prospective contractual relations, involuntary winding up and termination, *quantum meruit*, unjust enrichment, promissory estoppel, and claims for other injunctive relief. In six appellate issues, Addante and Dyer seek reversal of the judgment on the contract and declaratory-relief claims, including reversal of the specific-performance relief awarded, offering several reasons for why Adkins and RivenRock cannot recover in contract. We agree with Addante and Dyer that Adkins and RivenRock cannot

recover in contract because the parties agreed to a condition precedent to contract formation and that condition was unmet. Thus, we reverse all challenged portions of the trial court's judgment and render judgment that Adkins and RivenRock take nothing on their contract claims and on most of their declaratory-relief claims.[1]

## BACKGROUND

Addante and Dyer developed a business idea for building and operating a luxury RV park along a road in Caldwell County called Camino Real. They formed Camino Real Developers, LLC for the project, with Camino Real's Company Agreement going into effect in late 2017. In accordance with the Company Agreement, one of Camino Real's members— JLR Mansions, LLC—would be responsible for much of the LLC's capital funding. JLR Mansions owned a 50% membership interest in the LLC. Addante and Dyer were the other two members, each owning a 25% membership interest. JLR Mansions was run by Josh Dikoff.

Dikoff came to doubt JLR Mansions' ability to keep meeting Camino Real's funding needs, including the monthly payments on its land note, so Addante and Dyer began looking for someone to take JLR Mansions' place in the project. Addante approached Jeff Ballard

---

[1] There is one item of declaratory relief awarded by the trial court's judgment that is not challenged by the appellants' issues—a declaration "that RivenRock LLC owns a 50% membership interest in Camino Real Developers, LLC." Also, no one challenges the portions of the judgment that deny all other claims in the suit, that is, Adkins and RivenRock's other claims and Addante and Dyer's and Camino Real's counterclaims, and that order each side to bear their own fees and costs. We affirm these unchallenged portions of the judgment. *See Bass v. Bogle*, No. 03-23-00319-CV, 2024 WL 3446921, at *7 (Tex. App.—Austin July 18, 2024, no pet.) (mem. op.) ("As a preliminary matter, we address the portions of the final judgment that are not challenged on appeal. Specifically, no party has challenged [two portions of the judgment]. Because they are unchallenged on appeal, we affirm those portions of the final judgment."); *Elliott v. Rockwood Vill. Partners, Ltd.*, No. 03-12-00298-CV, 2012 WL 6554826, at *8 (Tex. App.— Austin Dec. 12, 2012, no pet.) (mem. op.) ("The remaining portions of the district court's judgment were not challenged on appeal and are therefore affirmed.").

about taking over the funding role in the project. In the midst of their discussions, Addante in early August 2018 emailed Ballard, copying Dyer, a document titled "Financial Scope Recap."

The Recap is addressed as a letter to Ballard from Addante, with Camino Real's name appearing just below Addante's in the signature block. The Recap, according to its beginning, "summarizes the financial scope of the project" and gives "a snapshot of our anticipated costs, returns, phased build out and financial costs/stakes/responsibilities to move forward." The Recap then discusses a sale of JLR Mansions' 50% membership interest in Camino Real and the buyer of that interest's assuming "all current liabilities of the Business of the Company . . . ." The Recap gives details under headings titled "Current LLC expenses," "Project Costs and Buildout Schedule," "Project Design / Preconstruction," and "Investor Responsibilities." And under that last heading, the Recap says: "Complete financial funding and liability throughout construction and park operation. The financial partner will have 50% revenue stake as well as 2/3 dictating vote of financial and larger operation matters. All other management and operation duties will be the sole responsibility of 2 other members."

Discussions continued among Addante, Dyer, and Ballard, and Adkins was soon brought in. Adkins and Ballard were the co-owners of RivenRock. A week after Addante emailed the Recap to Ballard, Dyer emailed it to Adkins. The Recap, Adkins testified at trial, was the first written communication about Camino Real that he ever saw. Discussions continued.

The day after the Dyer–Adkins email, Addante emailed Adkins, copying Dyer and Ballard, to send two items—(1) the Recap and (2) a letter of intent with the filename "LOI - Ballard." Addante described in his email the "attachments below: our current LLC, original LOI and the financial/timeline project overview."

3

Eleven days later, in late August 2018, Adkins emailed Addante, copying Ballard, to return a signed copy of a slightly edited version of the letter of intent, substantially the same in terms as the document named "LOI – Ballard." The edited document bore a new date and included Adkins as an addressee alongside Ballard, among other changes not relevant here. Adkins had signed this revised letter of intent. (We refer to this document signed by Adkins as the "LOI.") Adkins admitted in his trial testimony that "there's some overlap" between the LOI's terms and the Recap's. Also in the LOI was language calling for a "definitive agreement" among the parties:

**2. Definitive Agreement**

The closing will be subject to the negotiation and execution of definitive transaction documents that will include, among other things, customary representations, warranties, covenants, and indemnities by [Camino Real] and their principals regarding the business, operations, and financial condition of the Business.

 . . . .

**4. Conditions to Closing**

The consummation of the Transaction will be subject to the satisfaction of customary conditions, including, without limitation . . . [t]he negotiation, execution, and delivery of definitive agreements satisfactory to each of the parties . . . .

**5. Binding Agreement**

Other than this paragraph 5, which is intended to be and is legally binding, this letter is nonbinding and constitutes an indication of intent only and creates no liability or obligation of any nature whatsoever among the parties hereto with respect to any contemplated transaction or any other matter or action described or referred to herein. Legally binding obligations with respect to the contemplated transaction will only arise upon execution of a definitive agreement and related agreements with respect to the transaction.

Discussions continued between the parties, moving toward the drafting of documents to effect the sale of JLR Mansions' 50% membership interest to RivenRock.

In September 2018, Adkins emailed Addante a draft of a purchase agreement between JLR Mansions and RivenRock. Later that month, Adkins edited the draft in accordance with requests made by Addante,[2] and Addante and Dyer responded that the edited draft sent to them looked good. Near the end of the month, the documents effecting the sale of the 50% membership interest from JLR Mansions to RivenRock were fully executed by Dikoff and Adkins. The closing of the sale was postponed for a time, and later in fall 2018, Dikoff and Adkins executed an amendment to the sale documents allowing for a two-part payment to be made to JLR Mansions. Both payments were made.

Afterward, in December, Adkins emailed Addante and Dyer to, as Adkins testified at trial, "begin discussions around finalizing a new operating agreement" to replace the Camino Real Company Agreement. From this point onward, Adkins, per his testimony, made the monthly land-note payments for Camino Real.

The next summer, Dikoff, Addante, Dyer, and Adkins executed documents among themselves and with Camino Real's lender acknowledging that RivenRock had replaced JLR Mansions and that Adkins had replaced Dikoff as personal guarantor of Camino Real's land note. A short time later, Adkins bought out Ballard's rights and interest in RivenRock.

But as the months went on, a disagreement grew between Adkins on the one hand and Addante and Dyer on the other about management of Camino Real. The disagreement

---

[2] Adkins's original document included a paragraph that would have required Addante and Dyer to sign an attached "First Amended Operating Agreement of" Camino Real, which would have granted RivenRock "majority voting power (51%) over all Camino Real Developers, LLC's affairs, operations, and transactions, despite [RivenRock]'s ownership of a mere fifty percent" of Camino Real. Addante asked that this paragraph be removed, writing back to Adkins to say that Addante and Dyer "want to keep new amendment operating agreement separate." Adkins removed the paragraph before sending the edited draft back to Addante and Dyer.

involved whether RivenRock was entitled to, as mentioned in the Recap, the two-thirds voting rights over certain matters in Camino Real or whether, in Addante and Dyer's view, the parties had not yet drafted and signed any definitive agreement, such as an amended company agreement for Camino Real, resolving the relative voting strengths in Camino Real of Addante, Dyer, and RivenRock. Unable to resolve the disagreement, Adkins and RivenRock filed this suit.

Adkins and RivenRock pleaded several claims against Addante and Dyer, and they sought monetary, declaratory, and specific-performance relief. Camino Real intervened in the suit to assert rights and obligations relating to its Company Agreement. The parties tried the suit to the bench and submitted their closing arguments in writing to the court.

The court sent a letter to the parties to inform them of its ruling in the suit. The court said in its letter that RivenRock "has a 50% ownership interest in Camino Real and a 2/3 voting authority over financial and larger operational matters," that a "$5 million capital call issued by" Addante and Dyer for Camino Real over RivenRock's opposition "is voided," and that each side was to pay its own attorneys' fees. The letter mentioned no other relief.

The court asked Adkins and RivenRock to draft a judgment for the court's signature. They did not object to the court's ruling. Instead, they submitted a draft judgment, and the trial court signed exactly the judgment that they submitted.

According to the signed judgment, the court rendered judgment for Adkins and RivenRock on their claims for breach of contract and declaratory and specific-performance relief, and it denied all other claims in the suit, whether Adkins and RivenRock's other claims or Addante and Dyer's or Camino Real's counterclaims. The judgment does not award any monetary relief. Otherwise, generally speaking, the judgment awards a declaration about RivenRock's ownership of the 50% membership interest in Camino Real; declarations and specific performance regarding

6

the two-thirds voting rights over certain Camino Real matters as mentioned in the Recap; declarations and specific performance explaining that Adkins and RivenRock were not bound by the Camino Real Company Agreement; and an order voiding the 2022 capital call that Addante and Dyer had voted to approve in their capacities as members of Camino Real to call on RivenRock to contribute funds to the LLC. The court stated in writing its findings of fact and conclusions of law and sent them to the parties and later wrote and sent another round of findings and conclusions.

The court explained in its findings and conclusions that it had rendered judgment in contract for Adkins and RivenRock because the Recap communicated an offer of contract to them that they later accepted by performance. The Recap, the court ruled, offered that in exchange for (1) RivenRock's buying the 50% membership interest, (2) its paying Camino Real's expenses as they came due, and (3) Adkins's becoming the personal guarantor of the land note, RivenRock would receive a 50% revenue stake in Camino Real and the two-thirds voting rights over certain Camino Real matters that the Recap mentioned. The court ruled that these terms, proposed by the Recap, were accepted by Adkins and RivenRock by their performance, forming a binding contract (the Contract).[3] The court also concluded that the LOI did not affect the Contract at all but related only to JLR Mansions' sale of the 50% membership interest to RivenRock.

Addante, Dyer, and Camino Real now appeal.

**STANDARD OF REVIEW**

When, as here, the parties try their suit to the bench and the trial court has made and sent its written findings of fact and conclusions of law to the parties, we review the findings and conclusions according to their substance, not their title. *See* Tex. R. Civ. P. 296–97; *12636*

---

[3] The purported Contract and the Camino Real Company Agreement are different items.

7

*Rsch. Ltd. v. Indian Bros.*, No. 03-19-00078-CV, 2021 WL 417027, at \*5 (Tex. App.—Austin Feb. 5, 2021, no pet.) (mem. op.).  Although the trial court is the factfinder in a bench trial and its findings of fact are entitled to deference, we review the court's conclusions of law *de novo*.  *See id.* at \*5, \*8.  Trial courts' decisions on questions of law are afforded no deference.  *Custer v. Wells Fargo Bank, N.A.*, No. 03-15-00362-CV, 2016 WL 1084165, at \*2 (Tex. App.—Austin Mar. 18, 2016, pet. dism'd w.o.j.) (mem. op.); *see also Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) ("We review legal questions that rest on a factual basis de novo, while affording deference to the trial court's findings of fact.").

## DISCUSSION

Addante and Dyer in their six appellate issues offer several independent reasons for why Adkins and RivenRock should not have recovered on the Contract.  Many of their reasons depend on showing that the trial court erred by concluding that the Contract's terms were evidenced by the Recap alone and were not affected by the LOI—in other words, that the LOI should not be construed together with the Recap when analyzing the Contract.  Addante and Dyer argue under one of their issues that if the Recap and LOI are construed together, then a condition present in the LOI went unmet and prevented them from being liable on the Contract.

Camino Real raises four appellate issues of its own, the first three of which address the declaratory and specific-performance relief awarded by the trial court that says that Adkins and RivenRock are not bound by the Camino Real Company Agreement and that otherwise orders Addante and Dyer to cause RivenRock to be admitted as a Member and Manager of Camino Real under the Company Agreement.  Then in its fourth issue, Camino Real attacks the portion of the trial court's judgment that awarded declaratory relief voiding the capital call for Camino Real

8

voted on by both Addante and Dyer because, the court ruled, RivenRock should have enjoyed the two-thirds voting rights and would have voted against the capital call.

We agree with Addante and Dyer that the Recap and LOI must as a matter of law be construed together when analyzing the Contract. As a result, and because there is no evidence that the condition present in the LOI was fulfilled, Addante and Dyer are not liable on the Contract, and the trial court erred by concluding otherwise. Without judgment on their claim for breach of contract, Adkins and RivenRock are not entitled to the declaratory and specific-performance relief in the trial court's judgment that Addante, Dyer, and Camino Real challenge in this appeal.

***The LOI and Recap must be construed together***

Many of the parties' competing positions in this appeal depend on the threshold dispute of whether the LOI must be read as part of any contract formed or to be formed between the parties.[4] The Contract, according to the trial court and to Adkins and RivenRock, is set forth in the Recap and is not affected by the LOI. The trial court in its findings and conclusions said that the LOI "only related to the sale of JLR Mansions' 50% membership interest in Camino Real and did not address the offer of the Voting Rights contained in the . . . Recap," that the LOI "did not relate to the" Contract, and that it "only related to the transaction between RivenRock on the one hand and JLR Mansions on the other for RivenRock's purchase of JLR Mansions' 50% membership interest in Camino Real." The court thus concluded that the LOI "did not have any effect on the offer" set forth in the Recap. Addante and Dyer disagree with all this, arguing that the LOI must be read as part of any proposed contract between the parties.

---

[4] Addante and Dyer preserved their appellate issues relating to this dispute by their written closing arguments filed with the trial court after the close of evidence at the bench trial.

9

When analyzing whether a contract was formed between parties, courts may decide that the contract is "expressed in multiple writings exchanged between the parties." *See Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 669 & n.2 (Tex. 2020); *see also Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (applying "well-established law that instruments pertaining to the same transaction may be read together to ascertain the parties' intent"). "In appropriate instances, courts may construe all the documents as if they were part of a single, unified instrument." *Fort Worth ISD*, 22 S.W.3d at 840. The decision that a contract comprises multiple writings may be made as a matter of law. *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020); *Fort Worth ISD*, 22 S.W.3d at 840. Trial courts' decisions on questions of law are not entitled to deference. *See Custer*, 2016 WL 1084165, at *2.

When deciding whether multiple writings "are part and parcel of a unified instrument, a court may consider whether each [writing] was 'a necessary part of the same transaction.'" *See Rieder*, 603 S.W.3d at 94 (quoting *Board of Ins. Comm'rs v. Great S. Life Ins. Co.*, 239 S.W.2d 803, 809 (Tex. 1951)); *see also In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (orig. proceeding) (per curiam) (standard met because "the two writings pertained to the same transaction"); *Veal v. Thomason*, 159 S.W.2d 472, 475 (Tex. 1942) ("It is the settled rule in this State, as well as the rule generally, that written contracts executed in different instruments whereby a single transaction or purpose is consummated are to be taken and construed together as one contract."), *superseded by rule on other grounds as recognized in In re Kappmeyer*, 668 S.W.3d 651, 658 n.9 (Tex. 2023) (orig. proceeding). The consideration of that issue involves "reviewing the language of [the multiple writings] and the facts and circumstances surrounding their execution." *See Rieder*, 603 S.W.3d at 95. Multiple writings may pertain to the same transaction even if the parties executed them at different times and even if the writings do not

expressly refer to each other. *Fort Worth ISD*, 22 S.W.3d at 840. For example, when three successive writings, though made months apart, each involved a lease of the same farm and lacked any merger clause and the latter two built on the one just before by adding more detail about the leasehold interest involved, all three writings were appropriately considered together as one contract, as a matter of law. *See Arriola v. Kutscherousky*, No. 07-15-00004-CV, 2015 WL 5244417, at *2 (Tex. App.—Amarillo Sept. 4, 2015, pet. denied) (mem. op.).

To begin the analysis of the Recap and LOI, we review the Recap's terms that the trial court determined were the Contract terms offered. According to the findings and conclusions, Addante and Dyer proposed in the Recap that "RivenRock would buy JLR Mansions' 50% membership interest in Camino Real and pay Camino Real's then-existing financial obligations as they came due" and "Adkins would replace . . . Dikoff as a personal guarantor on the Project's land note." In exchange, Adkins and RivenRock would receive Addante and Dyer's "use [of] their authority as Managers of Camino Real to grant . . . RivenRock 'a 50% revenue stake as well as 2/3 dictating vote of financial and larger operation matters' over Camino Real."

Many of these same terms are addressed in the LOI. It uses nearly identical language to discuss the sale of the 50% membership interest and the payment of Camino Real's obligations. Compare the Recap's language,

> An entity newly formed by [Camino Real] would transfer the primary membership of 50% to Jeff Ballard, or said Group, substantially all of the operating assets, including all tangible and intangible assets, equipment, leases, contract rights, and intellectual property used in the Business for a purchase of full liability of capital needs per agreed upon terms,

with the LOI's,

11

An entity newly formed by [Camino Real] would transfer the primary membership of 50% to you or an entity nominated by you, substantially all of the operating assets, including all tangible and intangible assets, equipment, leases, contract rights, and intellectual property used in the Business for a purchase of full liability of capital needs per agreed upon terms.

Similarly, the Recap says that the "Buyer will assume all current liabilities of the Business of the Company as of September 1, 2018[,] with any new acquisition of liability to be agreed upon at a later date or shortly after," and the LOI says nearly the same thing, "Buyer will assume all current liabilities of the Business of the Company as of September 1, 2018[,] with any new acquisition of liability to be agreed upon at a later date."

The Recap's and LOI's contents bear still more resemblances. Both are addressed as letters to Ballard from Addante, with Camino Real's name just under Addante's. (The LOI is addressed to Adkins as well, and he signed it.) Both detail Camino Real's expenses of $3,000 for the land note and $15,000 for Initial Operation costs; the timing of Camino Real's Sewer Permit Costs; that the "50% LLC membership buyout" would be within either a month or two "of LLC agreement"; and that the rough summary of its expenses was $120,000. Moreover, in tension with the trial court's conclusion that the Recap alone states the Contract terms between the parties, the Recap lacks any merger clause.

As for the circumstances surrounding the two writings, Addante and Dyer at different times sent the Recap to Ballard and Adkins in early August 2018. On the same day in mid-August—via the same email, in fact—Addante sent *both* the Recap and the LOI to Adkins. The email describes the timeline and financing for their RV-park "project":

Tim,

See attachments below: our current LLC, original LOI and the financial/timeline project overview.

Please feel free to contact me with any questions.

Again, all pre-construction is at a holding point and ready to go. Our timeline is dependent on finalizing our business agreement and $10,000 sewer permit initiation.

Talk to y[']all soon!

At the end of the month, Adkins returned by email the LOI with his signature. (He never signed any copy of the Recap.) In an ensuing email chain stemming from his return of the signed LOI, Adkins told Addante, Dyer, and Ballard, "We will be meeting with our attorney . . . to draft the agreement to buy out Di[]koff and finalizing the LLC structure and agreements going forward."

Given all the similarities and interrelations between the Recap and LOI, in both their contents and their surrounding circumstances, we conclude as a matter of law that the LOI relates to any contract formed under the Recap between Addante, Dyer, Adkins, and RivenRock. Both writings were necessary parts of the same transaction involving Adkins and RivenRock's substitution for Dikoff and JLR Mansions in the Camino Real project to create the RV park. *See Rieder*, 603 S.W.3d at 94; *Laibe*, 307 S.W.3d at 317; *Arriola*, 2015 WL 5244417, at \*2.

Adkins and RivenRock resist this conclusion, making several arguments, but none persuades us. They point out that the LOI lacks terms about the Recap's "2/3 dictating vote of financial and larger operation matters" term. True enough, but in plenty of the cases in which Texas courts have construed multiple writings together, one of the writings lacked a term or concept contained in another. *See, e.g.*, *Laibe*, 307 S.W.3d at 316–17 (writings construed together even though one lacked forum-selection clause that other contained); *Sullivan v. Microsoft Corp.*, 618 S.W.3d 926, 931–34 (Tex. App.—El Paso 2021, no pet.) (offer letter and employment agreement construed together in suit for breach of offer letter even though offer letter lacked

13

forum-selection clause contained in employment agreement); *Title Res. Guar. Co. v. Lighthouse Church & Ministries*, 589 S.W.3d 226, 229, 233–42 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (construing two writings together as one contract even though first predated second by month, first included terms about payment of taxes that second lacked, and second contained terms about payment of taxes that first lacked); *Arriola*, 2015 WL 5244417, at *2 (three writings construed together even though first lacked term providing that lease was "cash lease" and first and second each lacked leasehold details contained in third); *Northern Nat. Gas Co. v. ONEOK Bushton Processing, Inc.*, No. 14-11-00539-CV, 2012 WL 4364652, at *5–9 & n.6 (Tex. App.—Houston [14th Dist.] Sept. 25, 2012, no pet.) (mem. op.) (two agreements construed together even though their terms about ownership of liquids were in tension). Similarly for Adkins and RivenRock's argument that the Recap involved different parties than did the LOI, the difference in parties does not undermine the conclusion that the Recap and LOI were still necessary parts of the same transaction. *See Northern Nat. Gas*, 2012 WL 4364652, at *5 n.6. In any event, the Recap and LOI on their face involve the same parties—both documents are addressed from Addante, with Camino Real's name just below his, to Ballard, and both were emailed to both Ballard and Adkins by either Addante or Dyer. Plus, similar to how Adkins argues that the Recap was an offer of contract to him and RivenRock, the LOI, which he signed, was addressed to him as well.

Adkins and RivenRock go on to point out that elsewhere among the LOI's terms is a statement that all its language aside from its definitive-agreement language is nonbinding:

> Other than this paragraph 5, which is intended to be and is legally binding, this letter is nonbinding and constitutes an indication of intent only and creates no liability or obligation of any nature whatsoever among the parties hereto with respect to any contemplated transaction or any other matter or action described or referred to herein. Legally binding obligations with respect to the contemplated

14

transaction will only arise upon execution of a definitive agreement and related agreements with respect to the transaction.

But Adkins and RivenRock provide no authority suggesting that the presence of some nonbinding terms prevents the Recap and LOI from being construed together—they still can be. The decision about whether to construe documents together can affect not only how a binding contract should be interpreted but also whether a binding contract was even formed. *See WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 643–47 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (construing multiple communications together and deciding as matter of law that contract was not formed because one communication included language providing that "[a] Proposal will only be deemed to be accepted upon the execution and delivery by [seller] of a [PSA]" and that "[u]ntil the [PSA] for this transaction is executed by [seller] and a purchaser, [seller] . . . shall not have any obligations to any party with respect to the contemplated transaction").

Adkins and RivenRock next point to the post-LOI sale documents between JLR Mansions and RivenRock, which effected the sale of the 50% membership interest. They assert that the LOI relates only to that sale and add that neither Addante nor Dyer could sell that interest because JLR Mansions owned it but that Addante and Dyer were arranging the sale for JLR Mansions. Yet the LOI's text does not match this interpretation—the LOI is addressed from Addante and Camino Real to Ballard and Adkins and was sent by Addante and Dyer to Ballard and Adkins, and it contains terms that on their face apply not just to JLR Mansions but to Addante and Dyer as well. The trial court in its findings and conclusions said that the Recap's offer of two-thirds voting rights over certain matters was a part of an overall transaction that also included the sale from JLR Mansions to RivenRock. That connection itself shows that the Recap and LOI should be tied together—both documents address terms of that overall transaction. *See Griffith*

15

*Techs., Inc. v. Packers Plus Energy Servs. (USA), Inc.*, No. 01-17-00097-CV, 2017 WL 6759200, at \*1, \*5 (Tex. App.—Houston [1st Dist.] Dec. 28, 2017, no pet.) (mem. op.) (stating that "guaranty was signed as part of the entire deal" partly because guaranty said that it existed to induce party into other agreement that was part of same deal).

Adkins and RivenRock also rely on testimony from Adkins and Ballard of their beliefs about what the LOI accomplished separate from the Recap. But we may construe contract-related documents together as a matter of law, and witnesses' subjective beliefs about contract formation do not supplant the objective manifestations of the parties' intent in the writings' terms and in the parties' actions. *See, e.g.*, *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 589 (Tex. App.—Austin 2007, pet. denied) (stating that decision about whether contract was formed "is based on the objective standard of what the parties said and how they acted, not on their subjective state of mind").

We conclude that the Recap and LOI must be construed together when analyzing any contract, binding or not, between the parties. The trial court erred to conclude otherwise.

***The LOI imposes a condition precedent to any binding contract obligations, so because the condition did not occur, Addante and Dyer cannot be liable for breach of contract***

The LOI includes language creating an important condition—in the definitive-agreement language quoted in full above. Among that language is the provision that "[l]egally binding obligations with respect to the contemplated transaction will only arise upon execution of a definitive agreement and related agreements with respect to the transaction."[5]

---

[5] Contract-related language may be construed as a matter of law to decide whether it creates a condition. *See Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); *Freeman v. Magnolia Petrol. Co.*, 171 S.W.2d 339, 342 (Tex. 1943). Trial courts' decisions on questions of law are not entitled to deference. *Custer v. Wells Fargo Bank, N.A.*, No. 03-15-00362-CV,

16

Contract-related conditions come in different forms, including conditions precedent to the formation of binding contractual obligations. *See, e.g.*, *Chalker Energy Partners III*, 595 S.W.3d at 673. Conditions precedent can emerge from parties' concluded agreements, and if such a condition benefiting a contracting party does not occur, then that party is not liable for its lack of performance under the agreement. *See id.* at 673–76. A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. *Id.* at 673.

Here, we conclude that the LOI's definitive-agreement condition was a condition precedent to binding contractual obligations. *See id.* Adkins assented to the definitive-agreement condition by signing the LOI, and he signed it before he took any of the actions that together, the trial court ruled, constituted his acceptance by performance of the Contract offer.[6] We assume without deciding that the trial court correctly ruled that the offer of the Contract was accepted by Adkins and RivenRock's performance of three undertakings: (1) RivenRock's buying JLR Mansions' 50% membership interest, (2) RivenRock's paying Camino Real's then-existing financial obligations as they came due, and (3) Adkins's replacing Dikoff as the personal guarantor of Camino Real's land note.

In both the trial court and this Court, Adkins and RivenRock have asserted that the definitive-agreement condition was satisfied by the sale documents effecting the sale of the 50% membership interest from JLR Mansions to RivenRock. But those sale documents involved

2016 WL 1084165, at *2 (Tex. App.—Austin Mar. 18, 2016, pet. dism'd w.o.j.) (mem. op.). Adkins and RivenRock's challenges to the LOI are that it is inapplicable to the Contract or nonbinding, but they do not challenge whether this LOI language creates a condition so long as the LOI is indeed applicable to the Contract and binding.

[6] We assume without deciding that the Recap and LOI when construed together state a legally valid offer of contract to Adkins and RivenRock that they accepted.

17

as parties only JLR Mansions and RivenRock. Satisfying the LOI's definitive-agreement condition had to have involved Addante and Dyer as well, based on construing the Recap and LOI together as one. That is because the Contract, if binding, would have required performance by not only JLR Mansions but also Addante and Dyer, specifically concerning the two-thirds voting rights, and because nothing in the Recap and LOI when construed together allows for reading the definitive-agreement condition as one benefitting JLR Mansions alone. Addante and Dyer were covered by that condition as well.

Because there is no evidence that any definitive agreement was signed between Addante, Dyer, Adkins, and RivenRock, the definitive-agreement condition precedent did not occur. Thus, Addante and Dyer cannot have been liable for breach of the Contract. *See id.* at 673–76; *Emmons v. Ingebretson*, 279 F. Supp. 558, 570, 572–73 (N.D. Iowa 1968) (citing and applying "nearly universal rule," and collecting case-law and treatise support for same rule, "that enforceable obligations cannot originate if one party does not intend to be bound prior to the execution of a written document and such intent is manifested in any way to the other party"); *Conditions precedent*, 13 Williston on Contracts § 38:7 (4th ed.) (detailing case in which court dismissed contract claim because of failure of condition precedent to formation of sublease contract that required written consent from prime landlord (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 416–21 (N.Y. 1995))).

Adkins and RivenRock argue that the LOI as a whole was nonbinding, but that is untrue under the LOI's definitive-agreement language. That language says that though the rest of the LOI is nonbinding, the definitive-agreement condition binds the parties.

Adkins and RivenRock otherwise argue that the LOI was not supported by consideration, but it was, in that it and the Recap are to be construed together as one instrument.

18

The trial court ruled that the Recap-alone Contract supplied mutual consideration for Addante and Dyer on one side and Adkins and RivenRock on the other, and we assume that ruling to be correct without deciding the issue.[7] Construing the LOI together with the Recap does not drain the Recap of its mutual consideration. Thus, any contract to be formed based on the Recap and LOI was not lacking consideration.

Adkins and RivenRock last argue that we should apply the estoppel rule of *Central Power and Light Co. v. Del Mar Conservation District*: that a party is estopped to avoid obligations under a transaction when the party retains benefits under that transaction. *See* 594 S.W.2d 782, 791 (Tex. App.—San Antonio 1980, writ ref'd n.r.e.). This brand of estoppel—acceptance of benefits—"is a species of quasi-estoppel." *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). As such, it requires proof that the party sought to be estopped is "maintain[ing] a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.*; *see also Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 548 (Tex. App.—Austin 1999, pet. denied) ("[Quasi-estoppel] precludes a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects.").

Here, there is no evidence of any inconsistent action by Addante and Dyer toward the Contract. Their consistent position before this suit, while litigating this suit, and on appeal has been that there is no enforceable contract for two-thirds voting rights in Camino Real but that by RivenRock's closing on its agreement to buy the 50% membership interest, RivenRock was brought under the Camino Real Company Agreement, whose terms provide that transfers of

---

[7] If it is not correct, then the Contract lacks consideration, and Adkins and RivenRock could not recover on it for that reason.

membership interests are subject to the Company Agreement's terms and that all assignees of membership interests are bound by the Company Agreement. Their position has been that Adkins and RivenRock were to perform the three undertakings mentioned above because Adkins and RivenRock were assuming Dikoff and JLR Mansions' role under the Company Agreement as the LLC member mainly responsible for funding the project. This was a consequence, Addante and Dyer say, of the terms of the Company Agreement and not of the Contract, the latter of which they challenge. Of course, Adkins and RivenRock dispute this position, and the trial court ruled inconsistently with it, but this still has been Addante and Dyer's consistent position. The only evidence that Adkins and RivenRock raise to support their assertion of estoppel is that Addante and Dyer have acted as if Adkins or RivenRock must make the payments mentioned or offer the personal guaranty. But this is no evidence of inconsistency—Addante and Dyer consistently acted in accordance with their belief that those acts were required under the Camino Real Company Agreement and that there was no formed contract for the two-thirds voting rights. *See Gano v. Diaz*, No. 03-17-00119-CV, 2018 WL 3150988, at *6 (Tex. App.—Austin June 28, 2018, no pet.) (mem. op.) (evidence did not raise fact issue on inconsistent action by party sought to be estopped); *cf. In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding) (party's actions are inconsistent when party seeks to avoid contract's arbitration provision while seeking benefits of same contract). Addante and Dyer thus were not accepting benefits *under the Contract*. *See Lawson v. Keene*, No. 03-13-00498-CV, 2016 WL 767772, at *6 (Tex. App.—Austin Feb. 23, 2016, pet. denied) (mem. op.) (collecting authorities that show that acceptance-of-benefits estoppel depends on party's assertion of benefits under terms of contract); *Skelton v. Washington Mut. Bank, F.A.*, 61 S.W.3d 56, 61 (Tex. App.—Amarillo 2001, no pet.) (applying estoppel rule of *Central Power and Light* when party to be estopped was "claiming rights under" instrument at issue).

20

In all, we conclude that because the LOI's definitive-agreement condition precedent did not occur, Addante and Dyer were not bound by any obligation to perform under the Contract. The trial court thus erred to render judgment on the Contract for Adkins and RivenRock. *See Chalker Energy Partners III*, 595 S.W.3d at 673 (party seeking to recover under contract bears burden of proving that all conditions precedent have been satisfied). We sustain the portions of Addante and Dyer's appellate issues that advance the LOI to attack the judgment on the Contract, and we need not reach their other issues that attack the judgment on the Contract for other reasons.[8] *See* Tex. R. App. P. 47.1.

Because of our conclusions, Adkins and RivenRock cannot recover on the Contract. Breach of contract was, aside from their requests for declaratory relief, the only one of their claims that was not denied by the trial court's judgment. Relatedly, much of the relief awarded by the judgment depends on the existence and enforceability of the Contract. Therefore, in addition to reversing the portion of the judgment granting judgment on the Contract, we also reverse the portions of the judgment that (a) declare that RivenRock "is entitled to a 2/3 dictating vote over financial and larger operational matters of" Camino Real; (b) order that Addante and Dyer

> must use their authority as Members and Managers of Camino Real . . . to take whatever actions necessary, including, but not limited to, executing an amended operating agreement for Camino Real . . . to admit RivenRock . . . as a Member and Manager of Camino Real . . . with a 2/3 dictating vote over financial and larger operational matters of Camino Real;

---

[8] For example, as alternative reasons for why Adkins and RivenRock could not recover in contract, Addante and Dyer have argued on appeal that the Recap is inadmissible parol evidence of a contract, they had revoked any offer of the Contract before Adkins and RivenRock accepted it by performance, their purported offer included more terms than the trial court concluded were part of the Contract, the Contract was not supported by sufficient consideration, and they lacked sufficient intent to form the Contract.

21

(c) declare that RivenRock's "2/3 dictating vote over financial and larger operational matters of Camino Real . . . will give it the sole power to control the financial and larger operational matters of Camino Real . . . , regardless of any vote or act of either or both of" Addante and Dyer; and

(d) declare that RivenRock "shall be admitted as a Member and Manager of Camino Real . . . with a 2/3 dictating vote over financial and larger operational matters of Camino Real . . . without agreement to be bound by the Company Agreement." *See Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 297–98 (Tex. App.—Austin 2018, pet. denied) ("While sometimes termed a 'cause of action' colloquially, declaratory relief under the UDJA is more precisely a type of *remedy* that may be obtained with respect to a cause of action or other substantive right."). This result is much like the one explained by our sister court in *Clear Lake City Water Authority v. Kirby Lake Development, Ltd.*:

> [A] declaratory judgment action is not necessarily an action for affirmative relief. The relief provided under the Declaratory Judgments Act is remedial only, and it serves only "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Here, [Appellant] has requested that we reverse "the judgment," which subsumes the declaratory judgment, because appellees' contract claims are infirm. The viability of the trial court's declaration is wholly dependent upon the existence of the contract liability [Appellant] challenges. Because we have found [Appellant] is not liable under its contracts with appellees, the relief granted pursuant to the Act cannot be sustained.

*See* 123 S.W.3d 735, 755 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (internal citations omitted) (quoting *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164 (Tex. 1993) (orig. proceeding)).

### Camino Real's appellate issues

As for Camino Real's appellate issues, it contends in its first two issues and in a portion of its third that the trial court erred by awarding the relief that RivenRock should be

admitted as a Member and Manager of Camino Real under the LLC's Company Agreement.[9] This relief depends, Adkins and RivenRock's appellate briefing confirms, on the existence and enforceability of the Contract—it was sought by Adkins and RivenRock as specific-performance relief on the Contract. Thus, because we have reversed the judgment on the Contract, we also reverse the portions of the judgment that order that RivenRock be admitted as a Member and Manager of Camino Real under the Company Agreement.

In the remainder of its third issue, Camino Real contends that the trial court erred by awarding relief declaring that RivenRock is not bound by the Camino Real Company Agreement. We reverse this declaratory relief for the same reasons we reversed the others above—without a successful underlying claim, Adkins and RivenRock are not entitled to any of the other declaratory relief awarded by the judgment and that is challenged in this appeal. *See Craig*, 550 S.W.3d at 297–98; *Clear Lake City Water Auth.*, 123 S.W.3d at 755.

In its final issue, Camino Real contends that the trial court erred by ordering that the $5-million capital call for Camino Real voted on by Addante and Dyer is void. The court in its findings and conclusions confirmed that it ordered this relief because by the time of their vote Addante and Dyer "had already granted RivenRock a 2/3 dictating vote of financial and larger operational matters of Camino Real" and RivenRock opposed the capital call. But because we have reversed the judgment on the Contract, Adkins and RivenRock no longer have any successful claim on which they could base this request for declaratory relief. Thus, this portion of the

---

[9] "A company agreement is enforceable by . . . the limited liability company, regardless of whether the company has signed or otherwise expressly adopted the agreement." *See* Act of May 9, 2017, 85th Leg., R.S., ch. 74, § 8, sec. 101.052(f), 2017 Tex. Gen. Laws 153, 155 (amended 2023) (version of Tex. Bus. Orgs. Code § 101.052(f) applicable to this suit).

judgment voiding the capital call must be reversed.[10]  *See Craig*, 550 S.W.3d at 297–98; *Clear Lake City Water Auth.*, 123 S.W.3d at 755.

We sustain all of Camino Real's appellate issues.

**CONCLUSION**

We affirm the portions of the trial court's judgment that declare "that RivenRock LLC owns a 50% membership interest in Camino Real Developers, LLC"; deny Adkins and RivenRock's claims on which the judgment did not award relief; deny Addante and Dyer's counterclaims and Camino Real's counterclaims; and that order that each side bear their own fees and costs because no one challenges those portions of the judgment.  We reverse the judgment in all other respects and render judgment that Adkins and RivenRock take nothing on their contract and declaratory claims.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis
    Dissenting Opinion by Justice Theofanis

Affirmed in part; Reversed and Rendered in part

Filed:   April 30, 2025

---

[10]  Beyond reversing this item of declaratory relief about the capital call, we express no opinion one way or the other about the propriety of the capital call.