

# NUMBER 13-23-00569-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROANE-WILLIAMS
TEXAS MINERALS, LLC,                                                    Appellant,

v.

EOG RESOURCES, INC. AND
REAGAN SMITH ENERGY
SOLUTIONS, INC.,                                                       Appellees.

## ON APPEAL FROM THE 218TH DISTRICT COURT
## OF KARNES COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Chief Justice Tijerina**

In this oil and gas dispute, appellant Roane-Williams Texas Minerals, LLC (Roane) sued appellees EOG Resources, Inc. (EOG) and Reagan Smith Energy Solutions, Inc. (Reagan) on various causes of action. By ten issues, Roane contends that the trial court

erred by granting summary judgment in favor of appellees, failing to consider newly presented evidence, and awarding attorney's fees to appellees.[1] We affirm.[2]

## I. BACKGROUND

Roane, a family business comprised of William A. Roane, Jr., Louis M. Williams, III, and James F. Roane II, owns an unleased, undivided 1/36 mineral interest in and under 125 acres in Karnes County, Texas. The federal government owns an undivided 1/4 mineral interest in the same tract that is managed by the United States Bureau of Land Management (BLM) and which is leased to EOG. The BLM was required to authorize co-development of the federal government's mineral interest via a communitization agreement.[3] Reagan agreed to provide consulting services to EOG and to prepare, circulate for signature, and file a communitization agreement with BLM for EOG. Reagan coordinated with BLM and the other interest owners, including Roane.[4]

## A. Communitization Documents

In 2017, EOG began planning for the joint mining of minerals in what EOG calls the "Blanc Unit." In February 2018, Cheryl McDowell, a Reagan representative, sent James a memorandum dated February 6, 2018, and a BLM Communitization Agreement

---

[1] We have reorganized and renumbered Roane's issues for purposes of our analysis.

[2] This appeal was transferred from the Fourth Court of Appeals in San Antonio, Texas pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] "Communitization agreements are 'drilling agreements' that allow 'operators who cannot independently develop separate tracts due to well-spacing or well development programs' to instead develop them cooperatively with other lessee operators. Their purpose is to 'promot[e] conservation and efficient utilization of minerals.'" *Birdbear v. United States*, 162 Fed. Cl. 225, 247 (2022) (internal citations omitted).

[4] Nonparties, Assurance Land and Minerals, LLC, Pagewood Interests, LLC, and PetroGulf Corporation were also part of the communitization agreement with BLM.

dated September 15, 2017 (the 2017 CA). The 2017 CA covered 823.150 acres (the Contract Area) in Karnes County and pertained to the "Blanc Unit #101 Well." The 2017 CA stated that certain oil and gas interests and leases, including the BLM's lease with EOG and Roane's unleased mineral interest, were set for communitization. The 2017 CA also included a lease dated January 28, 2009, (the Ranch Lease) for 120.910 acres (Tract 120.910) of a 2,248.14-acre area known as the T Bar L Ranches tract (the Ranch Tract). Thus, the Contract Area included 702.24 acres aside from Tract 120.910 for a total of 823.150 acres.

After James received the 2017 CA, McDowell sent an email requesting that Roane sign the 2017 CA, return it to McDowell, and McDowell would then forward it to BLM for approval. James forwarded the email to Mathew Grey, an EOG landman, for confirmation, and Grey referred James to Brian Pond, a senior EOG landman. Pond informed James by email that "[t]he [2017] CA is for the unit we are looking to form and co-develop" and that "[t]he federal process takes so long that we wanted to get ahead of the process." Pond planned on "working on the [Joint Operating Agreement (JOA)] for the Blanc [Unit] to send and for everyone to review." The members of Roane signed the 2017 CA as requested and sent it back to McDowell.[5]

According to Roane, the Ranch Lease restricts pooling depending on the percentage of acres that are included; therefore, because Tract 120.910 encompasses less than the required percentage of acres allowed to be pooled, EOG lacked "authority

---

[5] PetroGulf and Pagewood signed the 2017 CA; however, neither Assurance nor the BLM signed it.

to form the 823.15-acre communitization area described in the 2017 CA." Thus, sometime in August 2018, Reagan removed Tract 120.910 from the communitization proposal and updated the coverage area to exclude Tract 120.910 and to only include the remaining 702.24 acres in an updated communitization agreement with BLM (the 2018 CA). The 2018 CA was then filed with BLM on September 7, 2018, and BLM approved it on July 24, 2019. Roane did not sign the 2018 CA.[6]

## B.     The Other Documents

On August 14, 2018, Andrew Shorrosh, an EOG landman, emailed James that EOG was preparing a JOA for the "new Blanc Unit" that would include Roane's mineral interest and requesting that Roane execute and return documents relating to the Blanc Unit, including the Blanc Unit JOA with exhibits, the Blanc Unit JOA Memorandum, and the Blanc Horizontal Unit Designation (BHUD).

On August 31, 2018, James received the JOA and accompanying documents in an email from Jacquelyn Leonard, an EOG senior land assistant. In this email, Reagan notified James to expect a draft of the BHUD for his review and approval. James also received the JOA along with several election letters in the mail in early September 2018. On September 4, 2018, EOG issued well proposals (otherwise identified by the parties as WPAs) and authorizations for expenses (AFEs) for each well, including Blanc Unit #101H, Blanc Unit #102H, and Blanc C #103H. The WPAs and AFEs identified Roane's non-operating working interest under the JOA. A plat for each well accompanied each

---

[6] Roane claims that it did not receive "a copy of the 2018 CA for review and execution before it was filed . . . . Instead, Reagan simply and fraudulently removed the signature pages from the 2017 CA (with the exception of Assurance) and attached the signature pages to the 2018 CA to create an altered document."

4

document showing that Tract 120.910 was "not pooled." The AFEs stated how much Roane would pay for drilling and completing each well. Roane signed the WPAs and AFEs on September 13, 2018, electing to participate in the drilling of all three wells.

Roane signed the JOA on September 14, 2018.[7] The JOA requires each party to pay the amount of all operation costs and burdens of production in proportion to its ownership interest unless "the Drilling Unit equals the Contract Area." In that case, the parties still bear all operation costs in proportion to their own ownership interest, but the production burdens only for their respective tracts. Pursuant to the JOA, a drilling unit is "the area fixed for the drilling of one well by order or rule of any state or federal body having authority." However, "[i]f a Drilling Unit is not fixed by such rule or order, a Drilling Unit shall be the drilling unit as established by the pattern of drilling in the Contract Area unless fixed by express agreement of the Drilling Parties."

In early 2019, the parties signed the BHUD, agreeing that it became effective on December 1, 2018. In the BHUD, the parties agreed to "unitize, consolidate, pool, and combine their interests in the minerals beneath the 702.24-acre tract depicted in Exhibit C . . . [for] drilling, development, operation, and production of oil [and] gas" from the unit. Exhibit C depicts the same 702.24-acre area shown in the WPAs and AFEs that would be pooled and showed that Tract 120.910 is not pooled.

EOG completed the wells. In March 2019, EOG issued two division orders showing how EOG planned to pay Roane its share of production from the three wells. Roane

---

[7] Assurance, Pagewood, and PetroGulf also signed the JOA. Assurance and Pagewood assigned their JOA working interest, and by September 1, 2018, the non-working interest owners consisted of Roane, and other entities not relevant to this appeal.

5

received those payments beginning in January 2019. In mid-2019, EOG sent a second batch of WPAs and AFEs proposing new wells to be built and asking Roane whether it would participate in the cost of drilling and completion of those wells. Roane executed the WPAs and AFEs. The proposed wells were drilled and completed.

## C. The Dispute

EOG states that it discovered in early July 2019 that "the net revenue interests [NRI] reflected in the division order did not properly charge Roane for its proportional share of all production burdens as required by the" JOA. EOG claimed that the drilling unit did not encompass the entire Contract Area, and instead, the parties had agreed that the drilling unit consisted of the 702.24 acres as described in the BHUD. Thus, EOG asserted it overpaid "Roane on the first three wells." EOG states that it then "informed James . . . in writing of this error, explaining Roane's corrected [NRI] for wells located entirely within the 702.24-acre Drilling Unit is 0.00331668, not 0.00484148." Roane disputed EOG's calculations, and EOG did not pay the amount Roane demanded.

Roane sued EOG in 2020 for breach of the JOA and the 2017 CA, declaratory relief, Texas Natural Resources Code (TNRC) § 91.402 violations, fraud by non-disclosure, negligent misrepresentation, and an accounting. It also claimed EOG had underpaid because the drilling unit comprised the entire Contract Area of 823.15 acres; therefore, it was responsible for "the production burdens only for [its] respective tract[]." Roane also sued Reagan for fraud by non-disclosure and negligent misrepresentation.

## D. Motions for Summary Judgment

EOG filed several motions for traditional and no evidence summary judgment on

6

Roane's claims for breach of the JOA, breach of the 2017 CA, violations of the TNRC, fraud by non-disclosure, negligent misrepresentation, declaratory judgment, and an accounting. EOG further challenged Roane's theory of respondeat superior and request for exemplary damages. Reagan moved for summary judgment on Roane's claims against it. The trial court granted EOG's and Reagan's motions for summary judgment, denied Roane's motion for reconsideration based on allegedly newly discovered evidence, and, after a bench trial, awarded attorney's fees to EOG. This appeal followed.

## II.    NO EVIDENCE SUMMARY JUDGMENT

By its first issue, Roane contends that it met its summary judgment burden to raise material issues of fact as to each element of its breach of the 2017 CA claim.

## A.    Standard of Review & Applicable Law

Once the movant files a motion for no evidence summary judgment, "the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* (first citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); and then citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)).

> A plaintiff asserting a breach-of-contract claim must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff

7

sustained damages as a result of the breach. To prove the first element (the existence of a valid contract), the plaintiff must establish that (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. A particular breach-of-contract claim may involve disputes on any combination of these requirements, as well as on numerous defenses the defendant may assert.

*USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018) (cleaned up).

## B. Discussion

First, Roane argues it raised material issues of fact concerning the existence of a valid contract because in the 2017 CA, "EOG submitted an offer to Roane when Reagan, EOG's agent, sent the 2017 CA to Roane and requested that Roane sign it," and Roane accepted EOG's offer "to contribute its mineral interest to the communitized area in exchange for EOG's agreement to contribute certain oil and gas leases to the same."

In its petition, Roane asserted that EOG breached the 2017 CA by "its failure and refusal to properly pay [Roane] all oil and/or gas revenues derived by [EOG] from the sale of [Roane's] interests without regard to any consequences under the . . . 2017 CA." Roane sought damages "associated with [EOG's] failure and refusal to abide by the express terms of the . . . 2017 CA," which Roane claimed continued to "accrue monthly." EOG filed a motion for no evidence summary judgment challenging all elements of Roane's claim that EOG breached the 2017 CA. Thus, the burden shifted to Roane to defeat EOG's motion for summary judgment. *See Mack Trucks, Inc.*, 206 S.W.3d at 582.

The 2017 CA does not set out any of the terms regarding how EOG would "properly pay [Roane] all oil and/or gas revenues derived by [EOG] from the sale of [Roane's]

8

interests." *See Menchaca*, 545 S.W.3d at 502 n.21. The 2017 CA is a document that merely purports to pool certain mineral interests for purposes of building a specific well. It does not mention payment of mineral interests at all. *See id.* On appeal, Roane acknowledges that the 2017 CA is a contract to pool mineral interests stating, "The offer invited Roane to contribute its mineral interest to the communitized area in exchange for EOG's agreement to contribute certain oil and gas leases to the same" and that Roane accepted this offer. Roane does not explain how a contract to pool mineral interests that does not set out a payment method constitutes a contract for the payment of mineral interests. Thus, Roane has not shown on appeal that the 2017 CA was a valid contract concerning payment of royalties for its mineral interest. *See id.* Instead, Roane argues that the 2017 CA combined with the JOA constituted the documents that "would govern the operation of the Blanc Unit Contract Area." This is the extent of Roane's argument, and we are unable to discern how Roane expects us to reverse the summary judgment on this basis. *See* TEX. R. APP. P. 38.1(i).

Next, Roane contends that it "also produced evidence that EOG breached the 2017 CA and that Roane was underpaid as a direct result of EOG's failure to operate the communitized area as an entirety and is not allocating production to the interest owners in accordance with the express terms of the 2017 CA." This is the extent of Roane's argument. *See* TEX. R. APP. P. 38.1(i). However, as previously set out above, the 2017 CA does not set out a payment method, and Roane does not explain how by allegedly failing to pay Roane properly, EOG breached a document that does not set out a method of payment. *See id.* Moreover, Roane does not allege in its petition that EOG somehow

9

failed to properly pool the mineral interests. We are prohibited from making arguments on appellant's behalf, and we decline to decipher Roane's argument.[8] *See id.* We overrule Roane's first issue.

## III.    TRADITIONAL SUMMARY JUDGMENT

By its second through seventh issues, Roane challenges the traditional summary judgments.

## A.    Standard of Review

"Traditional summary judgment is proper if there is no genuine issue of material fact as to at least one essential element of the cause of action being asserted and the movant is entitled to judgment as a matter of law." *Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342, 346 (Tex. 2025). A defendant seeking a traditional summary judgment must either disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Sanchez v. Matagorda Cnty*, 124 S.W.3d 350, 352 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *Franks v. Roades*, 310 S.W.3d 615, 621 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (citing *City of Keller*, 168 S.W.3d at 816). The burden then shifts to the nonmovant to raise a genuine issue of material fact. *Zavala v. Franco*, 622 S.W.3d 612, 618 (Tex. App.—El Paso 2021, pet. denied); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). A genuine issue of material fact

---

[8] Roane does not address damages on appeal.

exists if there is more than a scintilla of evidence regarding the challenged element. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013).

We review the trial court's granting of a traditional motion for summary judgment de novo. *Franks*, 310 S.W.3d 615 at 620 (first citing *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); and then citing *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.)). Evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). All reasonable inferences, including any doubts, must be resolved in favor of the nonmovant. *Id.*

## B. Breach of Contract

By its second issue, Roane contends that the summary judgment dismissing its breach of the JOA claim against EOG is erroneous because "[t]here is a question whether the parties ever expressly agreed to fix a Drilling Unit that was different from the JOA's Contract Area" and "[t]o the extent that there was ever a Drilling Unit established, it would have been established by the 2017 CA or through a pattern of drilling." Roane asserts that the evidence shows that the Contract Area is the same as the Drilling Unit, and it should not be "burdened by its proportionate share of all of the lease burdens, including the burdens associated with the Ranch Lease, because it is only responsible for its share of a 1/48 NPRI." EOG responds that "[t]he plain language of twelve written agreements conclusively establishes the parties repeatedly expressly agreed to fix the 702.24 acre tract as a JOA 'Drilling Unit.'"

Our primary concern in construing a written contract is "to ascertain the true intentions of the parties as expressed in the instrument." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Therefore, we must "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* We give contract terms "their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Id.*

The dispute centers on two key provisions of the JOA. First, under the JOA, an alternate cost-burden allocation applies if the drilling unit "is identical to the Contract Area," under which Roane must bear the burdens of production solely for its own interest. If the drilling unit is not identical to the Contract Area, Roane must bear, equal to its percentage of ownership, "all burdens on [its] share of the production from the Contract Area." This interpretation of the JOA is undisputed by the parties.

Next, the JOA states that the parties may fix a drilling unit either by a pattern of drilling or "by express agreement."[9] The JOA defines a drilling unit as the area fixed for the drilling of one well. *See* 16 TEX. ADMIN. CODE ANN. § 3.38 (providing that a "drilling unit" is "[t]he acreage assigned to a well for drilling purposes"). The JOA does not purport to create a drilling unit for any of the wells. Thus, there is nothing in the JOA stating that the drilling unit is identical to the Contract Area, and the parties agree we must review other documents to determine whether the drilling unit is identical to the Contract Area.

---

[9] The JOA also allows a drilling unit to be created "by order or rule of any state or federal body having authority." It is undisputed that this is inapplicable to the facts of this case.

12

*See Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020). The parties disagree about which documents established the drilling unit. *See id.*

In its motion for summary judgment, EOG argued that the BHUD, WPAs, and AFEs conclusively established that the parties agreed that the drilling unit consisted of the 702.24-acre tract. Roane argues that the BHUD does not establish a drilling unit because although it may be construed with the JOA, it does not "purport to amend or otherwise indicate any intent by the parties to amend the JOA or to establish a drilling unit." Roane further argues that the BHUD merely "pools" the land of the various lessees.

The BHUD, however, states that the parties, including Roane, agree to "unitize" their interests in the minerals below the 702.24-acre tract depicted in Exhibit C for the purpose of "*drilling*, develop[ing], operat[ing], and produc[ing]," oil and gas from the Blanc Unit (emphasis added). The BHUD created a "*unit*" that "shall apply to *all production* . . . whether from horizontal or vertical wells" (emphasis added). The BHUD specifically sets out that the parties agree to "combine the acreage covered by the leases . . . and all mineral, royalty, overriding royalty, and leasehold interest" into one "unit containing seven-hundred and two 24/100 (702.24) surface acres." The BHUD also states, "The unit created hereby is designated as the Blanc Horizontal Unit." Finally, the BHUD references Exhibit B. Exhibit B states, "Attached to and made a part of the designation of the Blanc Horizontal Unit," and it sets forth the "metes and bounds description of [the] 702.24 acre Unit." Exhibit C, entitled "BLANC UNIT CALLED 702.24 ACRES KARNES COUNTY, TEXAS" is a plat showing that Tract 120.910 is not part of the drilling unit. Furthermore, the attachments to the WPAs for each well, signed by

13

Roane, set out that the area fixed for the drilling of each well is the 702.24 acres and excludes Tract 120.910. Additionally, EOG attached to its motion for summary judgment an "As-Drilled Plat" for each well, which show that Tract 120.910 is not included within the boundary of the drilling unit, not part of the Blanc Unit, and was not pooled. Therefore, after examining and considering the documents and harmonizing and giving effect to all the provisions so that none will be rendered meaningless, under their plain, ordinary, and generally accepted meanings, we conclude that the evidence conclusively establishes that the parties expressly agreed to fix the drilling unit of each well to the 702.24-acre tract.[10] *See Valence Operating Co.*, 164 S.W.3d at 662. Thus, EOG established as a matter of law that the drilling unit is not identical to the Contract Area.[11] *See id.*

Next, Roane argues that the parties agreed in the 2017 CA that the drilling unit is identical to the Contract Area because it "reflects the parties 'desire to communitize and pool their respective mineral interests in lands subject to this agreement for the purpose of developing and producing communitized substances in accordance with the terms and conditions of this agreement'" and the "plat attached to the 2017 CA as Exhibit A describes the same acreage in the JOA Contract Area."[12] This is the extent of Roane's

---

[10] Roane argues that because it does not have a lease, if the parties failed to create a drilling unit, then the default rule only applies to the non-operating working interest owners with leases. Given that we have concluded that the drilling unit is not identical to the Contract Area, we reject this argument. Moreover, Roane did not make this argument in the trial court, and therefore it is not preserved. *See Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 920 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Thus, the failure to present issues to defeat summary judgment in the trial court waives the issues on appeal." (citing *Kaye v. Harris Cnty Mun. Util. Dist. N. 9*, 866 S.W.2d 791, 794 (Tex. App. Houston [14th Dist.] 1993, no writ))).

[11] Reagan notes in its brief that "[o]f the 11 wells covered by the 11 AFE's Roane signed, eight of them were signed after EOG had communicated to Roane that it had overpaid Roane and would be recalculating Roane's burden . . . based on the 702 acre Drilling Unit instead of the 823 acre Contract Area."

[12] Roane argues in a separate section of its brief that "pooling" is not the same as creating a drilling

14

argument. *See* TEX. R. APP. P. 38.1(i). We are not persuaded by this argument as Roane has not established that the parties agreed in 2017 CA that the drilling unit of each of the wells was identical to the Contract Area.[13] We overrule Roane's second issue.[14]

## C. Declaratory Judgment

By its third issue, Roane contends that EOG was not entitled to summary judgment dismissing its declaratory judgment claim.

### 1. Applicable Law

Declaratory relief pursuant to the Uniform Declaratory Judgments Act (UDJA) is a remedy "that may be obtained with respect to a cause of action or other substantive right." *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 298 (Tex. App.—Austin 2018, pet. denied). The trial court may "declare rights, status, and other legal relations, which may be either affirmative or negative in form." *Id.* (cleaned up). The purpose of the UDJA "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations and may be deployed where a justiciable controversy exists regarding those matters that may be resolved with the declaration sought." *Id.* (cleaned up). A request for declaratory relief is moot "if the claim presents 'no live controversy.'"

---

unit. However, in this argument, it appears to claim that, by pooling their mineral interests in the 2017 CA, the parties created a drilling unit. *See Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 596 (Tex. 2018) (noting that § 3.40(a) of the Texas Administrative Code "permit(s) operators to pool acreage to create 'a drilling unit or proration unit by filing an original certified plat'").

[13] The 2017 CA only pertained to the "Blanc Unit #101 Well." There are no WPAs pertaining to this well, and there is nothing in the record showing that this well was built.

[14] Roane argues on appeal that "a Drilling Unit was established by a pattern of drilling, which means the parties could not have intended to have the [BHUD] establish a Drilling Unit." However, we have already concluded that the parties set the drilling unit by express agreement. Therefore, we need not address this argument. *See* TEX. R. APP. P. 47.1.

*Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (quoting *Tex. A&M Univ.–Kingsville v. Yarbrough*, 347 S.W.3d 289, 290 (Tex. 2011)). "[D]eclaratory relief is not warranted unless the claim presents a 'substantial controversy' of 'immediacy and reality.'" *Id.* (quoting *Yarbrough*, 347 S.W.3d at 291).

## 2. Discussion

Roane argues that the denial of declaratory relief was improper because "[t]he fact that Roane asserted a claim for breach of contract does not preclude its ability to seek declarations regarding its rights under the JOA"; "Roane was not simply asking for a declaration that EOG had breached the JOA"; and "[a] breach of contract claim and a request for declaratory judgment are not mutually exclusive."

In the trial court, Roane sought, among other things, declarations that: EOG has not made proper payment; the drilling unit "was fixed by the express agreement of the parties to the JOA to be 823.15 acres, being identical to the Contract Area under the JOA"; "[u]nder the JOA, [Roane] is burdened with only its proportionate share of the 1/48 NPRI burdening its unleased mineral interest"; and Roane's "royalty and net revenue interests are not burdened with any other leasehold burdens relating to the JOA."

In its motion for summary judgment, EOG asserted that because the trial court had already determined that it had not breached the JOA, the declarations Roane sought effectively required a finding that EOG breached the JOA failed as a matter of law.[15] EOG stated that Roane's "declaratory claim is utterly redundant such that no justiciable

---

[15] EOG filed its first motion for summary judgment requesting dismissal of Roane's breach of contract claims. The trial court granted that motion. Subsequently, EOG filed its motion requesting dismissal of Roane's declaratory judgment claims.

controversy exists," and that the declarations sought were "perfectly subsumed by [Roane's] breach of contract claim," which had already been dismissed by the trial court. EOG said, "There is simply no basis for allowing [Roane] to proceed on its duplicative declaratory judgment claim, especially where [Roane's] requested relief is fundamentally at odds with" the trial court's "dismissal of its breach of contract claim." Finally, EOG argued the declaratory judgment claim failed on the merits "because all parties to the Blanc Unit JOA, including [Roane] expressly agreed to establish a 702.24-acre Drilling Unit under the Blanc Unit JOA."

In its brief, Roane provides a laundry list of declarations it sought and states, "None of the declarations ask for a finding that there has been a breach of the JOA. Rather the declarations sought to address the rights and legal relations of the parties to the JOA, which is permissible." Roane then states: "Simply put, Roane's breach of contract claim and declaratory judgment claim are somewhat related and the interpretation of the JOA impacts both claims. However, even if Roane does not prevail on its breach of contract claim, it is still entitled to a judgment declaring its rights under the JOA." Although Roane cites caselaw setting out that a declaratory action and a breach of contract claim can be brought together, this is the only argument in Roane's brief regarding this issue.

Roane does not address EOG's summary judgment argument that its requests for declarations were redundant and therefore no justiciable controversy exists in light of the trial court's previous ruling on the breach of contract claim, and it does not explain with citation to pertinent authority and legal analysis why, although the breach of contract claim and declaratory judgment claim are "somewhat related," and the breach claim has been

17

resolved, it is "still entitled to a judgment declaring its rights under the JOA." *See* TEX. R. APP. P. 38.1(i).

Moreover, in its motion for summary judgment, EOG stated that Roane's "requested declarations presume that the Drilling Unit and the Contract Area are identical in size and that EOG breached the Blanc Unit JOA by obligating [Roane] to bear its proportionate, fair share of production burdens thereunder" and that because the trial court had already determined EOG had not breached the JOA, such declarations were improper. EOG argued that all of Roane's requests for declarations were barred due to the trial court's dismissal of Roane's breach of contract claim and that no justiciable controversy exists. Roane has an appellate burden to challenge all bases for the trial court's summary judgment. *See Gonzales v. Thorndale Coop. Gin & Grain Co.*, 578 S.W.3d 655, 657 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("When the appellant fails to challenge each possible summary-judgment ground, we must uphold the judgment on the unchallenged grounds."). Roane does not address each of EOG's summary judgment arguments on appeal. Accordingly, we must affirm the trial court's summary judgment on those grounds. *See Jinsun, LLC v. Mireskandari*, 694 S.W.3d 773, 777 (Tex. App.—Houston [14th Dist.] 2024, no pet.) ("If summary judgment may have been rendered, properly or improperly, on a ground not challenged on appeal, the judgment must be affirmed."); *Dealer Comput. Servs., Inc. v. DCT Hollister Rd, LLC*, 574 S.W.3d 610, 621 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm if an appellant fails to challenge all grounds on which summary

18

judgment may have been granted . . . even if summary judgment may have been rendered improperly on the unchallenged ground."). We overrule Roane's third issue.[16]

## D.    TNRC

By its fourth issue, Roane contends that summary judgment was improper on its claim pursuant to the TNRC because the Contract Area is identical to the drilling unit. Roane states, "EOG's ground for summary judgment on this claim was based entirely upon its erroneous construction of the JOA, i.e., there was a Drilling Unit established that was different in size than the JOA Contract Area." We have determined that EOG's interpretation of the JOA is correct and affirmed the summary judgment on this basis. Accordingly, we overrule Roane's fourth issue. *See* TEX. R. APP. P. 47.1.

## E.    Fraud by Non-disclosure and Negligent Misrepresentation

By its fifth and sixth issues, Roane contends that summary judgment is improper regarding its claims for fraud by non-disclosure and negligent misrepresentation because fact questions exist regarding whether EOG and Reagan had a duty to disclose and whether EOG and Reagan "made actionable statements regarding existing facts sufficient to support a claim for negligent misrepresentation."

### 1.    EOG

EOG responds that it did not represent that it would develop the Contract Area as one Drilling Unit and that "[i]f Roane ever had that impression, it could not have justifiably relied on it as a matter of law" because "Roane agreed to a different Drilling

---

[16] Roane has not challenged another basis for the trial court's grant of summary judgment—i.e., that the declaratory judgment claim failed on the merits "because all parties to the Blanc Unit JOA, including [Roane] expressly agreed to establish a 702.24-acre Drilling Unit under the Blanc Unit JOA." *See Jinsun, LLC v. Mireskandari*, 694 S.W.3d 773, 777 (Tex. App.—Houston [14th Dist.] 2024, no pet.).

Unit . . . twelve separate times." Finally, EOG argues we must affirm the summary judgment "because Roane did not challenge all the summary-judgment grounds EOG asserted for dismissal o[n] these claims."

EOG moved for summary judgment on Roane's fraud by non-disclosure and negligent misrepresentation claims on the grounds that, among other things, Roane's reliance on any alleged non-disclosures was not justifiable. Specifically, EOG argued that the evidence conclusively established that Roane had notice of the drilling unit's alleged difference in acres based on the various agreements it signed. Therefore, Roane could not have justifiably relied on any alleged disclosures to the contrary.

Actual and justifiable reliance is an element of both fraud by non-disclosure and negligent misrepresentation. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). On appeal, Roane does not address justifiable reliance. "Unless an appellant has specifically challenged every possible ground for summary judgment, the appellate court need not review the merits of the challenged ground and may affirm on an unchallenged ground." *Jinsun, LLC*, 694 S.W.3d at 777; *Dealer Comput. Servs., Inc.*, 574 S.W.3d at 621; *see also Vidaurri v. Harris*, No. 04-16-00453-CV, 2017 WL 2457079, at *1 (Tex. App.—San Antonio June 7, 2017, no pet.) (mem. op.) ("An appellant's failure to specifically challenge every possible ground for summary judgment waives any error."); *Blue Wave Cap., LLC v. Brownsville Reg'l Hosp., LLC*, No. 13–12–00416–CV, 2013 WL 4769446, at *6 (Tex. App.—Corpus Christi Sept. 5, 2013, no pet.) (mem. op.) ("If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the

unchallenged ground."). Accordingly, we overrule Roane's fifth issue.

## 2. Reagan

Roane sued Reagan for fraud by non-disclosure on the basis that Reagan, acting as EOG's agent, "owed an independent duty to Roane to use reasonable care in the preparation of the communitization agreements" and failed to disclose or concealed certain facts that are not specified by Roane. Roane sued Reagan for negligent misrepresentation for making false representations. Roane did not state what damages it sought in the section of its pleading setting out its various causes of action.

Reagan moved for summary judgment arguing, among other things, that Roane's fraud by non-disclosure and negligent misrepresentation claims were barred by the economic loss rule "as a matter of law because Roane does not claim to have suffered losses separate and apart from allegedly being underpaid under the JOA," and "[i]n this light, the only possible losses Roane could claim under either tort claim are the 'diminished' proceeds it purportedly earned under the JOA, i.e., the exact same losses Roane seeks in connection with its breach of contract claim against EOG."

By its sixth issue, Roane states the following:

> In analyzing whether the economic loss rule bars a claim, courts determine whether the plaintiff's claim arises out of the breach of a duty that arises separate and apart from the parties' contract. *See James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A., Inc.*, 403 S.W.3d 360, 366 (Tex. App.—Houston [1st Dist.] 2013, no pet.). And if so, the economic loss rule does not bar the claim. *Id.*; *see also Eagle Oil & Gas Co. v. Shale Exploration, LLC*, 549 S.W.3d 256, 269 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Here, much of Roane's claims are based upon EOG's and Reagan's willful misconduct concerning their dealings with Roane, their intentional alteration of documents, and the information that they did not disclose. EOG and Reagan had a common law duty to supply correct commercial information. *Comcast Corp. v. Houston Baseball Partners LLC*,

21

627 S.W.3d 398, 421 (Tex. App.—Houston [14th Dist.] 2021), aff'd, 671 S.W.3d 907 (Tex. 2023). As such, the economic loss rule does not bar the claims fraud by non[-]disclosure and negligent misrepresentation. *See id.*

This is the extent of Roane's argument. *See* TEX. R. APP. P. 38.1(i). Roane does not explain how its claims arise out of the breach of a duty that is separate and apart from the parties' contract. *See James J. Flanagan Shipping Corp.*, 403 S.W.3d at 366. Moreover, Roane does not argue nor show that the harm suffered is not the "same exact losses" that Roane sought in its breach of contract claim. *See Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Simply stated, under the economic loss rule, a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim."). Therefore, Roane has not met its appellate burden of showing that the summary judgment was improper on this basis. *See Jinsun, LLC*, 694 S.W.3d at 777; *Dealer Comput. Servs., Inc.*, 574 S.W.3d at 621; *see also Vidaurri*, 2017 WL 2457079, at *1; *Blue Wave Cap., LLC*, 2013 WL 4769446, at *6. Accordingly, we overrule Roane's sixth issue.

## F. Respondeat Superior Allegations, Request for an Accounting, and Exemplary Damages

By its seventh issue, Roane contends that if the summary judgment was improper on its claims for breach of contract, violation of the TNRC, negligent misrepresentation, fraud by non-disclosure, and declaratory relief, then summary judgment was improper on its respondeat superior allegations, request for an accounting, and request for exemplary damages. Because we have concluded that the summary judgment was proper on these claims, we overrule Roane's seventh issue. *See* TEX. R. APP. P. 47.1.

22

## IV.    MOTION FOR RECONSIDERATION

By its eighth issue, Roane contends that the trial court abused its discretion by not reconsidering its grant of EOG's motion for summary judgment on Roane's breach of the JOA claim. Roane argues that it provided the trial court with new evidence that it had not been able to obtain during discovery, which "showed that the instruments being relied upon by EOG to establish a 702.24-acre Drilling Unit under the JOA were not express agreements to do so and could not have modified the JOA."

A trial court's denial of a motion for reconsideration is reviewed for abuse of discretion. *Hermosillo v. K. Hovnanian Homes-DFW, LLC*, 329 S.W.3d 181, 185 (Tex. App.—Dallas 2010, no pet.). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). To prevail on a motion for reconsideration based on newly discovered evidence, the movant must show "that he became aware of the evidence after the trial, he could not have discovered the evidence earlier in the exercise of due diligence, the evidence is not cumulative, and the evidence is so material that it would probably produce a different result if a new trial was granted." *Hermosillo*, 329 S.W.3d at 185.

In its brief, Roane does not address several of these factors. Roane does not state on appeal that it could not have discovered the evidence earlier in the exercise of due diligence, that the evidence is not cumulative, or that the evidence is so material that it would probably produce a different result if a new trial was granted. Moreover, Roane does not cite any evidence in the record supporting these elements. *See* TEX. R. APP. P. 38.1(i). Therefore, Roane has not met its appellate burden of showing that the trial court

23

abused its discretion by denying its motion for reconsideration. *See Hermosillo*, 329 S.W.3d at 185. We overrule Roane's eighth issue.

## V.    ATTORNEY'S FEES

By its ninth and tenth issues, Roane contends that the attorney's fees are improper because EOG did not properly segregate its attorney's fees and "the evidence is insufficient to support the award of conditional appellate attorney's fees under *Yowell v. Granite Operating Co.*, 620 S.W.3d 335 (Tex. 2020)."

## A.    Segregation

First, by its ninth issue, Roane argues that EOG is not entitled to any attorney's fees that were not incurred for the declaratory judgment claims. Roane states that "EOG's blanket statement that 98 percent of work through trial was related to the declaratory judgments is tantamount to asserting that the facts of each of [Roane's] claims were so intertwined that segregation beyond two percent was not required." Roane further contends that "intertwined facts alone do not make unrecoverable fees recoverable." EOG responds that it adequately segregated the attorney's fees.

### 1.    Standard of Review and Applicable Law

Under the UDJA, the trial court may award "reasonable and necessary attorney's fees as are equitable and just" in a declaratory judgment action. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. We review a trial court's decision to award such fees for abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004); *see Berry v. Bay, Ltd.*, 643 S.W.3d 424, 431 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.). A trial court abuses its

24

discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles in reaching its ruling, or if its ruling is not supported by legally or factually sufficient evidence. *See Bocquet*, 972 S.W.2d at 21.

Generally, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006); *CA Partners v. Spears*, 274 S.W.3d 51, 81 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). However, "even when fee segregation is required, attorneys are not required to keep separate records documenting the exact amount of time prosecuting one claim versus another." *State Farm Lloyds v. Hanson*, 500 S.W.3d 84, 102 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Instead, "segregation is sufficiently established if an attorney testifies that a given percentage of the time worked would have been necessary even if the claim for which attorney's fees are unrecoverable had not been asserted." *Id.*

Whether attorney's fees need to be segregated "is a question of law, while the extent to which certain claims can or cannot be segregated is a mixed question of law and fact." *CA Partners*, 274 S.W.3d at 81 (citing *Chapa*, 212 S.W.3d at 312–13).

> [T]he fees necessary to prove particular claims often turn on facts [such as] how hard something was to discover and prove, how strongly it supported particular inferences or conclusions, how much difference it might make to the verdict, and a host of other details that include judgment and credibility questions about who had to do what and what it was worth.

*Chapa*, 212 S.W.3d at 313.

## 2. Discussion

Under the "relaxed standard enunciated in *Chapa*," *Hanson*, 500 S.W.3d at 104,

an attorney's testimony regarding how he segregated the attorney's fees and testimony that a certain percentage of its attorney's fees are recoverable is sufficient evidence of adequately segregated attorney's fees. *See Alief Indep. Sch. Dist. v. Perry*, 440 S.W.3d 228, 247 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Here, EOG presented evidence that ninety-eight percent of the attorney's fees were incurred for work related directly to defending itself from Roane's declaratory judgment requests, which the trial court's findings explain in detail. *See State Farm Lloyds*, 500 S.W.3d at 103 (determining that the evidence established proper segregation of attorney's fees because there was testimony that ninety-five percent of the fees were attributable to work for prosecuting the contract claim). EOG's expert witness, Corey Wehmeyer, testified that the bulk of work done related directly to the ever-changing list of requests for declaratory relief; Roane continuously added more requests for declarations; the declarations sought implicated the factual and legal matters pleaded in Roane's multiple petitions; the amended petitions spanned over three years; Roane resisted dispositive motions; EOG filed a series of dispositive motions relating to the declaratory judgment claims; and the factual allegations concerning the declarations sought were "ever-growing and changing." The trial court found Wehmeyer credible and noted Roane did not "call a single witness to rebut" any of Wehmeyer's testimony.

Therefore, we conclude that EOG presented evidence of how the attorney's fees were segregated and of the percentage of attorney's fees attributable to Roane's declaratory judgment claims. *See id.* Thus, the trial court did not abuse its discretion in awarding these fees. *See Bocquet*, 972 S.W.2d at 20; *Berry*, 643 S.W.3d at 431. We

26

overrule Roane's ninth issue.

## B.        Conditional Appellate Attorney's Fees

By its tenth issue, Roane contends the evidence is legally and factually insufficient to support the award of conditional appellate attorney's fees. *See Bocquet*, 972 S.W.2d at 21. Roane states, "For instance, the testimony does not inform the trier of fact what tasks are anticipated on appeal, such as analyzing the briefing, researching applicable law, and drafting responsive briefs," and the testimony "fails to inform the trier of fact who will perform these tasks."

The trial court found, a finding not challenged by Roane on appeal, that "Wehmeyer discussed his qualifications as a licensed attorney in the State of Texas in good standing since 2006, educated at the Texas Tech University School of Law, and his work since 2006 in energy litigation process." Wehmeyer presented evidence that he is board certified in oil, gas, and mineral law and civil trial by the Texas Board of Legal Specialization, and is "one of five attorneys in the State of Texas to hold that double board certification." Wehmeyer stated that he is familiar with reasonable attorney's fees and is responsible for billing this case and familiar with the services performed. Wehmeyer testified that he has presented oral argument in the appeals court in San Antonio, El Paso, Eastland, and Beaumont, Texas and has presented oral argument in the Texas Supreme Court twice.

Wehmeyer further testified as follows:

So in terms of having a sense of what does it cost for a case such as this one on appeal through the San Antonio Court of Appeals, which is where this would likely go . . . and it would be no different anywhere else[.] [I]t is my opinion that with respect to defending this Court's final judgment on the

27

declaratory judgment relief, a reasonable fee that should be contingently awarded . . . would be $50,000.

[I]f this unsuccessful plaintiff goes past the San Antonio intermediate court of appeals and takes a petition for review, if the Supreme Court orders us to respond to that, it's my opinion that it would be a reasonable and necessary fee of $10,000 that should be contingently awarded to EOG in responding to that petition for review.

If the Supreme Court sees enough in the petition for review that it orders full merits briefing, it's my opinion that $30,000 should then be contingently awarded to EOG through the merits briefing stage at the Supreme Court of Texas, specifically . . . attributable to affirming this Court's final judgment on the declaratory judgment.

And then, if there's not a per curiam opinion, the Supreme Court of Texas will usually summon you for oral argument. In terms of preparing for that oral argument . . . I have presented oral argument twice to the Supreme Court of Texas. It's my opinion that a $10,000 contingent fee award should be assessed there if we go all the way through the stage of the Supreme Court of Texas requesting oral argument and EOG being put all the way through that.

Through the first stage of appeal, which is a court of right . . . an appeal of right to the San Antonio Court of Appeals, $50,000 in reasonable and necessary and equitable and just attorneys' fees to EOG on the declaratory judgment. Through the petition for review stage at the Supreme Court of Texas, $10,000 reasonable and necessary, equitable and just to EOG attributable to the declaratory judgment.

Through the merits briefing stage, $30,000 reasonable and necessary, equitable and just at the Supreme Court of Texas. And through oral argument . . . and that is to the declaratory judgment. And then, through oral argument, an additional $10,000 reasonable and necessary, equitable and just attributable to the oral argument . . . and to just talk very high level the types of activities.

The reason I'm opining on $50,000 [as opposed to a higher amount] here is because these concern matters of . . . questions of law, albeit through four rounds of summary judgment fuss. But these are questions of law, and so we don't know exactly what the appeal's going to look like, but we don't have the jury issues, the charge issues, motions for new trial, all that sort of thing that go with it. So that's why I think . . . and this permeates to the Supreme Court of Texas stage as well. I've opined higher on that.

28

Basically, what that is doing is receiving their opening appellant's brief, preparing a response to that. And I have a board-certified appellate attorney that typically heads those efforts for us. But it's basically looking at that matter of law, getting a handle on the clerk's record and the reporter's record here and then packaging that up in response . . . in a responsive way.

And then it's basically the same at the Supreme Court of Texas with just the additional thread . . . there's typically argument in those briefings about why this isn't a matter of importance and why the Supreme Court shouldn't waste their time on it.

Wehmeyer testified that the hourly rate at his firm is $225 to $375 per hour.

"There is no certainty regarding who will represent the appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise." *Yowell*, 620 S.W.3d at 355. However, the party seeking conditional appellate attorney's fees must still present sufficient evidence regarding the services believed to be reasonably necessary to defend the appeal. *Id.* at 354. "The party seeking attorneys' fees bears the burden of proof and must supply enough facts to support the reasonableness of the amount awarded." *Id.* We must reverse a trial court's award of attorney's fees if there is insufficient evidence in the record. *Id.*

The San Antonio Court of Appeals found the following evidence to support the trial court's award of appellate attorney's fees:

I am familiar with reasonable and necessary attorney's fees for preparing, presenting, and addressing post verdict motions and any appeal in this type of case. I have handled appellate cases in various Courts of Appeal in Texas including the Fourth Court of Appeals throughout my forty[-]five (45) year practice. My opinion is that reasonable and necessary attorney's fees for an appeal to the Court of Appeals in this case will be Fifty Thousand Dollars ($50,000), and Thirty Five Thousand Dollars ($35,000) in the event

29

a Petition for Review is filed with the Supreme Court of Texas and the Court asks that the matter be briefed, and an additional Fifteen Thousand Dollars ($15,000) in the event the Petition for Review is granted and an additional Twelve Thousand Five Hundred Dollars ($12,500) in the event oral argument is scheduled. The above appellate fees are contingent on being successful on appeal.

*Gibbons & Bravos Surveying L.L.C. v. Gibbons*, ___ S.W.3d ___, ___, No. 04-24-00249-CV, 2025 WL 2326062, at *6 (Tex. App.—San Antonio Aug. 13, 2025, no pet.). The court further stated, "Moreover, sister courts have held there is no need to go into specific services required at each stage because 'all appeals involve researching, preparing, and drafting a brief, so remanding this case for a more specific description of particular services would provide little if any benefit.'" *Id.* at *7.

Wehmeyer testified as to his hourly rate and what he believed would be the costs at each stage of an appeal. Thus, Wehmeyer's testimony is similar to the testimony that the San Antonio Court of Appeals found sufficient. *See id.* Therefore, we conclude that the trial court did not abuse its discretion in awarding conditional appellate attorney's fees. *See Bocquet*, 972 S.W.2d at 20; *Berry*, 643 S.W.3d at 431. We overrule Roane's tenth issue.

## VI. CONCLUSION

The trial court's judgment is affirmed.

JAIME TIJERINA
Chief Justice

Delivered and filed on the
6th day of November, 2025.

30